**Brenda MALLOY and Nereida Gutierrez, on their own behalf and as parents and next friends of Curtis Malloy, Timothy Malloy and William Gutierrez, their minor children, and Carolyn Marsh and Esperanza Rodriguez, as next friends of Sheona Marsh and Jose Rodriguez, their minor grandchildren, and on behalf of all other persons similarly situated, Plaintiffs,**

v.

**Thomas EICHLER, in his official capacity as the Secretary of the Delaware Department of Health and Social Services, and Phyllis Hazel, in her official capacity as Director of the Department's Division of Economic Services, and Margaret Heckler, in her official capacity as Secretary of the United States Department of Health and Human Services, Defendants.**

Civ. A. No. 85–398 LON.

United States District Court, D. Delaware.

Feb. 4, 1986.

**584**

Anne M. Perillo, (argued), and Brian J. Hartman, of Community Legal Services, Inc., Wilmington, Del., for plaintiffs.

Richmond L. Williams, Dept. of Justice, Wilmington, Del., for defendants Eichler and Hazel.

Sue L. Robinson, U.S. Attys. Office, Wilmington, Del., for defendant Heckler.

LONGOBARDI, District Judge.

Plaintiffs seek a preliminary injunction and conditional class certification on behalf of all Delawareans rendered ineligible for Medicaid assistance by the State's application of section 2640 [1] of the Deficit Reduction Act of 1984 ("DEFRA"), Pub.L. No. 98–369, § 2640, 98 Stat. 494, 1145 (codified at 42 U.S.C. § 602(a)(38), (39)). Section 2640 requires the States to attribute to an applicant for Aid to Families with Dependent Children ("AFDC") the income of any siblings or grandparents living in the same assistance unit as the applicant. The issue raised is whether the application of these eligibility requirements to applicants for Medicaid is repugnant to section 1902(a)(17)(D) of the Medicaid Act (codified at 42 U.S.C. § 1396a(a)(17)(D)).

Plaintiffs are the heads of households denied access to or terminated from both AFDC and Medicaid following the October 1, 1984 effective date of section 2640. Plaintiffs argue that the Secretary is using section 2640 to require the States to "deem" the income of a sibling or grand-

1. Section 2640 reads in relevant part:
 (a) Section 402(a) of the Social Security Act (as amended by section 2624 of this Act) is further amended—
 
 \* \* \* \* \* \*
 
 (3) by inserting immediately after paragraph (37) the following new paragraphs:
 (38) provide that in making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), the State agency shall (except as otherwise provided in his part) include—
 (A) any parent of such child, and
 (B) any brother or sister of such child, if such brother, or sister meets the conditions described in clauses (1) and (2) of section 406(a), if such parent, brother or sister is living in the same home as the dependent child, and any income of or available for such parent, brother, or sister shall be included in making such determination and applying such paragraph with respect to the family (notwithstanding section 205(j), in the case of benefits provided under title II); and
 (39) provide that in making the determination under paragraph (7) with respect to a dependent child whose parent or legal guardian is under the age selected by the State pursuant to section 406(a)(2), the State agency shall (except as otherwise provided in this part) include any income of such minor's own parents or legal guardians who are living in the same home as such minor and dependent child, to the same extent that income of a stepparent is included under paragraph (31).
 Hereinafter, the provisions of section 2640(a)(3) which govern sibling income (codified at 42 U.S.C. § 602(a)(38)) will be referred to as "subsection (a)(38)." The provisions governing grandparent income (codified at 42 U.S.C. § 602(a)(39)) will be referred to as "subsection (a)(39)."

parent to an applicant for AFDC and Medicaid. In the jargon of the Social Security laws and regulations, "deeming" means that a state determines eligibility for a program's benefits by assuming that a portion of another person's income is "available" to the applicant. *Herweg v. Ray,* 455 U.S. 265, 267, 102 S.Ct. 1059, 1062, 71 L.Ed.2d 137 (1982). "Because an individual's eligibility for ... benefits depends in part on the financial resources that are 'available' to him, '[d]eeming ... has the effect of reducing both the number of eligible individuals and the amount of assistance paid to those who qualify." *Id.,* quoting *Schweiker v. Gray Panthers,* 453 U.S. 34, 36, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981). Plaintiffs charge that section 1902(a)(17)(D) of the Medicaid Act ("subsection (17)(D)") prohibits all deeming to determine eligibility for Medicaid unless the applicant is either the spouse or the minor, blind or disabled child of the person with income. They concede that such deeming is permissible under AFDC and do not challenge the application of section 2640 to that program.

Defendants[2] argue that the application of section 2640 to Medicaid eligibility is not an exercise of deeming but rather an example of Secretary Heckler's authority to prescribe standards for determining what income and resources are *available* to an applicant. *See* 42 U.S.C. § 1396(a)(17)(B) ("subsection (17)(B)"). The Secretary insists that her interpretation of section 2640, which is embodied in Letter 85–10 of the Health Care Financing Administration ("HCFA"), is entitled to "legislative effect." This status would limit the Court's review to the narrow issue of whether the Secretary has exceeded her statutory authority or acted in an arbitrary or capricious manner. *See Batterton v. Francis,* 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977).

For the reasons stated below, the Court rejects the Secretary's view of the effect of her letter. We find instead that her interpretation of section 2640 is inconsistent with the words and purpose of the statutes involved, the regulations issued thereunder and the relevant Supreme Court precedents. Consequently, the Court grants Plaintiffs' motions for both class certification and preliminary injunctive relief.

**I**

**A. LEGAL BACKGROUND**

The Medicaid program, established in 1965 as Title XIX of the Social Security Act ("Act"), 79 Stat. 343, as amended, 42 U.S.C. § 1396, *et seq.* (1982 ed. and Supp. I), is a cooperative effort in which the national government and the participating States jointly "reimburse certain costs of medical treatment for needy persons." *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). States electing to participate in Medicaid must develop plans that contain "reasonable standards ... for determining [both] eligibility for and the extent of medical assistance." 42 U.S.C. § 1396a(a)(17); *Schweiker v. Gray Panthers,* 453 U.S. at 36, 101 S.Ct. at 2336. These plans "must comply with requirements imposed by both the Act itself and by the Secretary of Health and Human Services." *Schweiker v. Gray Panthers,* 453 U.S. at 37, 101 S.Ct. at 2636–37. These requirements include an obligation to provide medical assistance to the "categorically needy" who are defined by the Act to be recipients of cash assistance under either the AFDC or the Supplemental Security Income for the Aged, Blind, and Disabled Program ("SSI"). 42 U.S.C. § 1381, *et seq.,* Pub.L. 92–603, 86 Stat. 1465. The participating States also have the option of providing assistance for the "medically needy" who are "persons lacking the ability to pay

---

**2.** Defendant Eichler is Secretary of Delaware's Department of Health and Social Services. Defendant Hazel is Director of the Department's Division of Economic Services. Together, they possess administrative authority over Delaware's Medicaid program.

Defendant Heckler is Secretary of the Federal Department of Health and Human Services. She possesses administrative authority over federal participation in the Medicaid program.

for medical expenses, but with incomes too large to qualify for categorical assistance." *Schweiker v. Gray Panthers*, 453 U.S. at 37, 101 S.Ct. at 2636–37. Delaware participates in the Medicaid program but has not exercised the "medically needy" option. It provides assistance only to the "categorically needy."

A person who becomes ineligible for cash assistance under AFDC remains eligible for Medicaid as a "categorically needy" person if the reason for his termination from AFDC is an eligibility requirement precluded by Title XIX of the Act. 42 C.F.R. 435.113 (1984).[3] Under Title XIX, the States' assessment of financial need may consider only "such income and resources as are, as determined in accordance with standards prescribed by the Secretary, *available* to the applicant or recipient." 42 U.S.C. § 1396a(a)(17)(B) (emphasis added). These eligibility assessments may not consider "the financial responsibility of any individual for any applicant or recipient of assistance ... unless such applicant or recipient is such individual's spouse" or minor, blind or disabled child. 42 U.S.C. § 1396a(a)(17)(D). This latter provision limits the income which States may "deem", *i.e.*, assume, available to an applicant for Medicaid. *See Schweiker v. Gray Panthers*, 453 U.S. at 36, 101 S.Ct. at 2636.

Plaintiffs contend that the eligibility requirements imposed by section 2640 contravene subsection (17)(D)'s prohibition on deeming beyond the spouse and parent relationships. States reviewing applications for AFDC cash assistance must now count as available to the applicant the income of all siblings and grandparents living within the assistance unit. 42 U.S.C. § 602(a)(38), (39). Previously, applicants had been permitted to maximize family benefits by excluding from the assistance unit the income of certain family members. This change has eliminated AFDC benefits for numerous Delawareans, including Plaintiffs, even though the State's measurement of need accounts for the inclusion of the additional unit members. Delaware excluded these individuals from Medicaid following their elimination from AFDC because it no longer viewed them as "categorically needy." Plaintiffs charge that their Medicaid terminations occurred solely because of the deeming of sibling and grandparent income, a practice they regard as expressly prohibited by subsection (17)(D). Plaintiffs rely on 42 C.F.R. 435.113 to argue that they are, and have at all times remained, "categorically needy" because their AFDC benefits were terminated by an eligibility requirement expressly precluded from application to Medicaid by Title XIX.

Defendants argue that the application of the income determination methodologies of subsection (a)(38) to Medicaid eligibility is *not deeming* but rather a proper exercise of Secretary Heckler's statutory authority to define "available income" for Title XIX purposes. *See* 42 U.S.C. § 1396a(a)(17)(B). The Secretary counters suggestions that sibling and grandparent income is not actually available to the typical Medicaid applicant by contending that Supreme Court precedents place "the meaning of the term 'available' ... somewhere between the mere presumption of support (*i.e.*, deeming) and actual contributions." Brief of Federal Defendant ("BFD"), Docket Item ("D.I.") 31, at 20. To the Secretary, section 2640 "recognizes the economic realities of the filing unit" by "determining the financial condition of the unit as a whole and the child's own eligibility as part of that unit." *Id.* at 21. The Secretary claims that she is *not* considering the child with income to be "financially responsible" for his siblings; instead, she asserts that she is merely recognizing as "available" income the "indirect benefit[s]"[4] which accrue to

---

3. In its entirety, 42 C.F.R. § 435.113 states that: "The agency must provide Medicaid to individuals who would be eligible for AFDC except for an eligibility requirement used in that program that is specifically prohibited under title XIX."

4. The Secretary provides the following example of an indirect benefit:

When a mother uses one child's Social Security benefits to pay the rent, that expenditure has been properly made for the benefit of the child but his siblings in the unit have also

the destitute applicant from expenditures made on behalf of the self-sustaining child. *Id.* at 20–22.

The Secretary admits that the provisions of subsection (a)(39) contravene the mandate of subsection (17)(D) because they require the deeming of income from grandparents outside the assistance unit to the grandchildren/applicants within the unit. 42 U.S.C. § 602(a)(39). In contrast, the Secretary believes that the provisions of subsection (a)(38) only consider:

> a child's and a sibling's income when [the sibling is] a member of the assistance unit.... [This] merely specifies who must apply for assistance. It does not change the income determination methodology, which has always taken into account the income and needs of all members of the filing unit in determining the eligibility of the unit. Thus, the sibling's income is considered in determining his or her own eligibility as part of a unit and the siblings are not considered "financially responsible" for each other as that term is used in ... section [ (17)(D) ].

HCFA Regional Medicaid Letter No. 85–10, D.I. 12A, Tab B. Thus, the Secretary treats the grandparent statute (subsection (a)(39)) differently only because the income of the resident parent is imputed *to a "unit* composed of the minor parent and her dependent children." BFD, D.I. 31 at 23 (emphasis added). The Secretary sees no prob-

lem with imputing grandparent income where the grandparents are *within* the unit. HCFA Regional Medicaid Letter No. 85, D.I. 12A, Tab B. It is her view, therefore, that income is only "deemed" when it is attributed from outside the unit because her (17)(B) authority to define "available" income allows her to assume funds from persons within the unit.

In summary, the parties' arguments can be distilled to a single legal issue: Does the practice of counting as "available" to a Medicaid applicant the income of siblings or grandparents within the same assistance unit constitute "deeming" that is repugnant to subsection (17)(D)?

## B. FACTUAL BACKGROUND

The experiences of the named Plaintiffs illustrate the impact of the Secretary's interpretation of section 2640 on Medicaid applicants. Brenda Malloy and Nereida Gutierrez are single parents who head households eliminated from both AFDC and Medicaid because of sibling deeming. Prior to February 1, 1985, Malloy received benefits from both programs for herself and her two sons. A third child, Melinda, was precluded from obtaining assistance because she received Social Security death benefits from the account of her deceased father. Following the effective date of section 2640, Melinda and her income were

---

received the indirect benefit of having their shelter provided. This is clearly not a situation where the child with income has a "financial responsibility" for his brothers and sisters, but one of incidental benefit that accurately reflects economics of scale.

BFD at 21–11. This example is replete with flaws. First, adult caretakers are often prohibited by either court order or statute from using money designated for a minor beneficiary for any purpose other than that child's benefit. Hence, numerous expenditures which might benefit the destitute siblings are prohibited by law. In addition, the premise of the Secretary's argument is contradicted by her concession that subsection (17)(B) does not permit her to count as available to the minor applicant the income of stepparents and grandparents living in the same residence. (Such income can be counted for AFDC purposes. *See* 42 U.S.C. § 602(a)(31), (39)). There is simply no principled distinction between the "incidental benefits" created by

their income and those flowing from the income of a sibling.

The Secretary also fails to distinguish communal goods such as shelter from private goods such as food, clothing and medicine. While a dollar expended for rent may provide a roof under which many can seek shelter, with the protection afforded to one not gained at the expense of exposing another, a dollar spent on bread, wool or penicillin can only nourish, warm or cure the one. While they are being used or once they have been consumed, these goods can give no benefit, direct or otherwise, to another person.

Finally, the Secretary ignores the diseconomies of large numbers. If only one child in a family has income, any sums expended for the benefit of the others comes at her expense. Thus, an otherwise self-sustaining child can be dragged below the poverty line by the collective needs of her siblings.

considered part of the Malloy unit applying for AFDC assistance. In January of 1985, Ms. Malloy received notice that her AFDC and Medicaid benefits would terminate at month's end because Melinda's income exceeded the federally established needs of a four person unit. Malloy's administrative efforts to obtain reinstatement to Medicaid failed because the agency found no conflict between section 2640 and (17)(D). The Malloy family has suffered considerably from the loss of these benefits. Sixteen year old Curtis was hospitalized in September for one week following a severe asthma attack which might not have occurred had he taken quantities of a prescription medicine once supplied by Medicaid but now beyond his family's financial grasp. Affidavit of Dr. William J. Geimeier, D.I. 16B at 3. In addition, Curtis incurred substantial bills during his hospitalization which the Malloy family cannot satisfy.

Nereida Gutierrez and her son, William, received Medicaid and AFDC benefits until Delaware included in the assistance unit Gutierrez' other two children and the child support voluntarily paid on their behalf by their father. This $365.00 monthly payment placed the family unit over Delaware's AFDC eligibility level of $336.00 for a family of four. Like Malloy, Gutierrez failed in her efforts to obtain reinstatement to Medicaid. Medical affidavits suggest that Gutierrez' health is at risk unless she resumes regular medical treatments which she currently cannot afford. Affidavit of Dr. Robert L. MecKlenburg, D.I. 16B at 9. Her two sons are also apparently without the means to procure necessary medical services.

Esperanza Rodriguez and Carolyn Marsh are grandmothers who head households terminated from both AFDC and Medicaid because of the grandparent deeming authorized by section 2640. Rodriguez and her husband reside with their minor daughter, Maria, and Maria's infant son, José. Pursuant to State regulations, Rodriguez acted as the caretaker relative receiving AFDC and Medicaid assistance on José's behalf. Effective January 1, 1985, José lost his benefits because his grandfather's income exceeded the eligibility guidelines of AFDC. Rodriguez received an administrative hearing on March 18, 1985, which resulted in a letter of April 17, 1985, from Phyllis T. Hazel, Acting Director of the Division of Economic Services ("DES"), telling her that "[t]he decision ... to discontinue Medicaid benefits for your grandchild is reversed. You will be contacted by the Medicaid Unit and your grandson's Medicaid will be reinstated retroactive to January 1, 1985." D.I. 16B at 22. Five days later, Rodriguez received a notice from a DES case worker telling her to reapply for Medicaid on José's behalf. She was asked to bring proof of her wages, José's birth and José's residence in her home. To date, Rodriguez has not filed the necessary documentation.

Carolyn Marsh's minor daughter, Kimberly, and Kimberly's infant daughter, Sheona, live with Marsh and other relatives. Sheona has had serious medical problems since her birth in November, 1984. Affidavit of Dr. José Manalo. D.I. 16B at 15. Carolyn Marsh claims to have made unsuccessful attempts in March and June of 1985 to obtain Medicaid benefits on Sheona's behalf. The parties disagree about whether she filed the proper applications on these occasions. Nevertheless, Sheona Marsh did begin receiving Medicaid benefits effective August 1, 1985. Affidavit of Ruth Fischer, D.I. 18A.

## II

### Plaintiffs' Motion for Conditional Class Certification

Plaintiffs seek certification of a class composed of persons ineligible for Medicaid because of both the sibling and the grandparent provisions of section 2640. Defendants have conceded certification of the sibling class represented by Plaintiffs Malloy and Gutierrez but object to certification of the grandparent class that is putatively represented by Plaintiffs Rodriguez and Marsh. Plaintiffs have argued in the alternative that any defects in representation caused by circumstances unique to Rodri-

guez and Marsh can be cured by recognition of Malloy and Gutierrez as suitable representatives of the grandparent class.[5] Consequently, the Court must assess the viability of both Rodriguez/Marsh and Malloy/Gutierrez [6] as grandparent class representatives.

The district court has considerable discretion when making determinations about prospective classes. *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 607 (W.D.Pa.1983). Its decision must turn on whether the moving party has satisfied all four requirements of Rule 23(a) and at least one of the subsections of Rule 23(b). *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). For purposes of this case, the relevant requirements are as follows:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> * * * * * *

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; . . . .

Fed.R.Civ.P. 23.

 It is apparent that neither Rodriguez nor Marsh qualifies as an appropriate class representative. Though factual dissimilarities alone do not destroy typicality, *Steiner v. Equimark*, 96 F.R.D. at 609, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982). A named plaintiff must also "[assure] the court of his willingness to prosecute the claims herein." *Cohen v. Uniroyal, Inc.*, 77 F.R.D. 685, 692 (E.D.Pa.1977). Rodriguez has known for some time that completion of the necessary paperwork would result in the resumption of her benefits. Despite the state's offer to expedite processing of her case, Rodriguez has still not provided the appropriate documents. Rodriguez' apparent disinterest in her personal affairs raises grave doubts about her capacity and willingness to prosecute the claims of others. On the record before us at this time, we must conclude that she is an inappropriate class representative.

 The record also fails to establish Marsh's suitability to serve as class representative. Unlike the purported class, Marsh has received Medicaid benefits since August 1, 1985. Though that fact alone does not vitiate her ability to represent the class, Plaintiffs' failure to provide additional evidence that Marsh remains an appropriate Plaintiff notwithstanding her receipt of benefits constitutes the failure to carry their burden under Rule 23. The Court has only been told that Marsh unsuccessfully applied for benefits in March and June of 1985. We have not received adequate evidence proving that the original denials resulted from the deeming of grandparent income rather than her failure to complete the proper application. In addition, the record contains no evidence illuminating the reasons for the State's initiation of benefits last August. Plaintiffs bear the burden of satisfying Rule 23 on this motion

---

**5.** Defendants have not offered a response to this argument.

**6.** For the sake of economy, the Court will refer only to Plaintiff Malloy when discussing the capacity of both Malloy and Gutierrez to serve as grandparent class representatives.

590

and they simply have not carried it with respect to Marsh.

■ The failings attributable to Rodriguez and Marsh do not inure to the capacity of Plaintiffs Malloy and Gutierrez. Although they are victims only of the provisions requiring sibling deeming, Malloy and Gutierrez share the same legal position attributable to the purported grandparent classes, *i.e.*, they have been denied Medicaid benefits by a provision of the AFDC statute which allegedly contravenes the limitations of subsection (17)(D) of the Medicaid Act. Since Rule 23 only requires the named plaintiff to have common issues of fact *or* law with the class, the difference in sibling or grandparent status will not alter the legal issue involved. Malloy and Gutierrez can, therefore, represent the grandparent class if the other requirements of Rule 23 are met.

### A. NUMEROSITY

■ The numerosity requirement of Rule 23(a)(1) appears to be satisfied in this case. Though the Court cannot presently state with specificity the number of affected persons in the grandparent class,[7] Defendants have conceded that at least 26 cases involving 30 persons are at issue. Defendants further admit that the grandparent cases could compose some of the 7,000 AFDC cases closed or denied between October, 1984 and October, 1985, but claim that research to determine the precise number of grandparent cases embodied within the 7,000 case group would be unduly burdensome. Given the probability that at least some of these 7,000 cases fall within the grandparent class, the actual number of claims likely to be at stake in this litigation compares favorably with the number found acceptable by other courts. *See, e.g, Weiss v. York Hospital*, 745 F.2d 786, 808 (3d Cir.1984) (class consisting of 92 members satisfied the numerosity requirement); *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 175 (10th Cir.1977) (membership of 48 persons is sufficient for

Rule 23(a)(1)). The Court concludes, therefore, that Plaintiffs have met the numerosity requirement of Rule 23(a)(1).

### B. COMMONALITY

■ The plain language of Rule 23(a)(2) requires the representative plaintiff to show only that common questions of law *or* fact exist. Fed.R.Civ.P. 23(a)(2); *see Steiner v. Equimark Corp.*, 96 F.R.D. at 608; *Cohen v. Uniroyal, Inc.*, 77 F.R.D. at 691. By majority rule, "differences in the underlying facts of individual class members' cases do not defeat a showing of commonality where there are common questions of law." *Ortiz v. Eichler*, 616 F.Supp. 1046, 1055 (D.Del.1985). *See also, Like v. Carter*, 448 F.2d 798, 802 (8th Cir. 1971); *cert. denied*, 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972) ("[f]actual differences are not fatal if common questions of law exist"). Here, the lone distinction between the claims of Malloy and the grandparent class is the purely factual difference in the category of the blood relation from whom income is attributed. Defendants themselves view the *legal* issue facing the grandparent class as *identical* to that of the sibling group. *See* HCFA Regional Medicaid Letter 85–10, D.I. 12 at Tab B. ("In the case of a grandparent who is a member of the filing unit, the *policy set forth in the preceding paragraph [discussing the sibling issue] would apply;* that is, consideration of income from grandparents in the same household who are considered members of the same filing unit is not prohibited by the Medicaid program.") (Emphasis added.) The same principles of law will necessarily dictate the result as to each group of Plaintiffs because subsection (17)(D) either prohibits income deeming from persons within the assistance unit other than parents or spouses or it does not. The only fact of significance, therefore, is whether the persons with income are within or outside the assistance unit; the degree of their lineage is irrelevant. Malloy has demonstrated that

**7.** The parties are currently engaged in a discovery dispute about the adequacy of Defendants' response to queries about the magnitude of the grandparent class.

her individual case shares questions of law with the claims pressed by the grandparent class because she seeks to represent only those persons denied assistance because of income deemed from within the assistance unit.

## C. TYPICALITY

 The commonality, typicality and adequacy of representation requirements of Rule 23 tend to merge at certain points of inquiry. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740. Both commonality and typicality "serve as guideposts for determining ... whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* The adequacy of representation requirement has been interpreted to raise concerns about the competence of counsel and the existence of conflicts of interest. *Id.; Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). For analytical purposes, "[t]he basic goal of the typicality requirement is to examine whether the claims of the class representatives have essential characteristics in common with the claims of class members." *Ortiz v. Eichler,* 616 F.Supp. at 1056; *See also, Steiner v. Equimark,* 96 F.R.D. at 609 ("the class representative's claims are typical when the 'essence' of the allegations concerning liability, and not the particulars, are sufficiently similar to those of the other class members"). If the district court finds similarity in the essence of their claims, differences in personal characteristics between the class representative and some class members will be disregarded. *See Ortiz v. Eichler,* 616 F.Supp. 1046 (allowed recipients of public assistance to represent a class including applicants because the same administrative hearing procedures affected each group); *Almenares v. Wyman,* 453 F.2d 1075 (2d Cir.1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972) (allowed AFDC recipi-

ents to represent AABD recipients in a challenge to hearing procedures used by both programs); *cf. General Telephone Co. of Southwest v. Falcon,* 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15 (an employee allegedly denied a promotion because of discrimination cannot represent a class of unhired applicants when no evidence exists that such criteria applied to its hiring practices; however, the court would allow such representation where "the discrimination manifested itself in hiring and promotion practices in the same general fashion"). Here, the essence of the sibling and grandparent claims is the same. Each group relies on the same legal arguments to contend that subsection (17)(D) precludes income deeming from anyone other than a spouse or a parent. Since the circumstances of this case dictate that the result reached as to one group will necessarily apply to the other, the Court finds that the essence of the sibling and grandparent claims is sufficiently similar to allow Malloy to satisfy the typicality requirement on behalf of the latter group.

## D. ADEQUACY OF REPRESENTATION

The Third Circuit Court of Appeals has established a two-part test for determining adequacy of representation: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to the class." *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d at 247. The qualifications of Plaintiffs' counsel have been recognized in earlier cases before this court, *Ortiz v. Eichler,* 616 F.Supp. at 1058, and are conceded to be excellent by Defendants in this action. For the reasons already discussed, Malloy's interest in this litigation is congruent with that of the grandparent class. She is, therefore, an adequate representative for purposes of Rule 23(a)(4).

## E. RULE 23(B)(2) REQUIREMENTS

 There appears to be little doubt that Defendants have "acted ... on

grounds generally applicable to the class." Fed.R.Civ.P. 23(b)(2). In general, the courts have found "class action challenges to public assistance practices ... to be appropriate for treatment under Rule 23(b)(2)." *Ortiz v. Eichler*, 616 F.Supp. at 1058. The Advisory Committee believes that Rule 23(b)(2) should apply anytime action "based on grounds which have general application to the class" takes effect or is threatened. Fed.R.Civ.P. 23, advisory committee note. In this case, *all* minor applicants for or recipients of Medicaid are denied benefits whenever their "available" income, defined to include the income of siblings and grandparents within their assistance unit, exceeds state established need levels. Such a policy is clearly of general application to the class Plaintiffs seek to represent. Consequently, Plaintiffs have satisfied the requirements of Rule 23(b)(2).

### F. SUMMARY

The Court concludes that Plaintiffs Malloy and Gutierrez have satisfied all four requirements of Rule 23(a) as well as the single requirement of Rule 23(b)(2). Consequently, the Court conditionally certifies them as representatives of the class of Delaware residents denied or terminated from Medicaid benefits because of the application of section 2640 of DEFRA. However, the Court wishes to stress the conditional nature of its certification order, particularly with respect to the named Plaintiffs' representation of the grandparent class. At some point in this litigation, Plaintiffs will need to identify the specific grandparent cases which require relief. The Court's task will be made easier if one or more of these cases is substituted for the inadequate Rodriguez and Marsh claims currently before us.

### III

### PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

To secure preliminary relief in the Third Circuit, a plaintiff must satisfy the four part inquiry enumerated in *A.O. Smith Corp. v. Federal Trade Commission*, 530 F.2d 515, 525 (3d Cir.1976). Malloy, Gutierrez, et al, thus bear the burden of demonstrating:

1. That they are likely to prevail on the merits;

2. That absent such relief, they will suffer irreparable injury;

3. That an award of the requested relief will not substantially harm other interested parties; and

4. That the public interest will not be harmed by the relief that they seek.

### A. Likelihood of Success on the Merits

Initially, this Court must decide whether Plaintiffs are likely to prove that the Secretary is deeming income in violation of subsection (17)(D). Several factors weigh in this decision. First, this Court must determine the appropriate standard by which to review the Secretary's interpretation of section 2640. The Secretary insists that her views are entitled to a "legislative effect" that can be overturned only if she has exceeded her statutory authority or acted in an arbitrary or capricious manner. *See Batterton v. Francis*, 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977). A finding that her views lack legislative effect will not foreclose the issue because an administrative interpretation is entitled to substantial weight when it satisfies the conditions enumerated in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). *See also Batterton v. Francis*, 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9. Because the *Skidmore* inquiry assesses the validity of the administrator's reasoning and her consistency with earlier and later pronouncements, the determination of the weight to be accorded to the Secretary's interpretation will necessarily involve a judgment about whether she is defining available income within the acceptable bounds of subsection (17)(B) or requiring deeming in violation of subsection (17)(D). *See Schweiker v. Gray Panthers*, 453 U.S. at 43–44, 101 S.Ct. at 2639–40.

### 1. Is the Secretary's Interpretation Entitled to Legislative Effect?

■■■ Secretary Heckler relies upon three recent cases, *Herweg v. Ray*, 455 U.S. 265, 102 S.Ct. 1059, 71 L.Ed.2d 137 (1982), *Schweiker v. Gray Panthers*, 453 U.S. 43–44, 101 S.Ct. 2640 and *Batterton v. Francis*, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448, for her position that this Court should limit its review of HCFA letter 85–10 to the arbitrary and capricious inquiry. BFD, D.I. 31 at 14. In each of the cited cases, the Supreme Court applied this limited standard of review to affirm *regulations* that exercised the Secretary's statutory authority to *define* certain terms of the Social Security Act. *See Herweg v. Ray*, 455 U.S. 265, 102 S.Ct. 1059, 71 L.Ed.2d 137 (affirming 42 C.F.R. § 435.723 (1980) which placed time limitations on the States' ability to consider a spouse's income as "available" to an applicant after the applicant is institutionalized); *Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (affirming 42 C.F.R. § 435.734, §§ 436.602, 436.711 and 436.821 (1980) which authorized greater "deeming" of spousal income in States exercising their section 209(b) option not to participate in SSI); *Batterton v. Francis*, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (affirming 45 C.F.R. § 233.100(a)(1) (1976) which exercised the Secretary's authority to prescribe standards for determining what constitutes "unemployment" for purposes of the AFDC–Unemployed Fathers program). *See also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (discussing the proper judicial approach to EPA *regulations* interpreting the Clean Air Act). The three precedents expose two key flaws in the Secretary's present argument. First, HCFA letter 85–10 is *not* a legislative or substantive regulation. It has not been published in conformity with the requirements of the Administrative Procedure Act ("APA") such that it is entitled to "the force and effect of law." *See Batterton v. Francis*, 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9. Secondly, Letter 85–10 does not define "available" income and resources in the manner of the cited

regulations. Rather, it seeks "to clarify the effect that certain parts of section 2640 ... have on Medicaid eligibility determinations" by offering an *interpretation* of the provision's effect on the previously employed income determination methodology. HCFA Regional Medicaid Letter No. 85–10, D.I. 12A at Tab B. The letter is more closely akin to the statutory interpretation traditionally left to the courts than it is to the statutory definition delegated to the Secretary. Thus, the Secretary's words are not entitled to legislative effect and her interpretation must be subjected to more intense scrutiny than that applied under the arbitrary and capricious standard.

### 2. Is the Secretary's Interpretation Entitled to Substantial Weight?

■■■ The Secretary's interpretation of section 2640 may deserve substantial deference notwithstanding its failure to carry a legislative effect. *Batterton v. Francis*, 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9. "[T]he rulings, interpretations and opinions of the Administrator [of an] Act" have long been considered "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. at 140, 65 S.Ct. at 164. The degree of deference accorded to an administrative interpretation "will depend upon the thoroughness exigent in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements and all those factors which give it power to persuade, if lacking power to control." *Id.* An administrative interpretation that is inconsistent with the Congressional purpose will not be given deference. *Morton v. Ruiz*, 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974). Thus, the Secretary's interpretation will warrant deference only if it accords with the letter and tradition of the Medicaid Act.

(a) *The Secretary's Interpretation Is Not Supported by the Plain Language and Legislative History of 42 U.S.C. § 1396(a)(17)(B), (D)*

The plain language of the Medicaid Act would appear to limit the Secretary's au-

thority to prescribe standards for "available" income to sums both actually received by the applicant and assumed available from a parent or spouse. In relevant part, the statute requires the plans of participating States to:

(17) include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which ...

\* \* \* \* \* \*

(B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient ..., and

\* \* \* \* \* \*

(D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 or ... is blind or permanently and totally disabled....

Because the labyrinthine Social Security Act is replete with terms of art that conjure special meaning only to the initiated, *Cf. Schweiker v. Gray Panthers*, 453 U.S. at 43, 101 S.Ct. at 2640, a court seeking to resolve the conundrums created by its various provisions must pay special attention to the context of its words. For that reason, we must turn to the legislative history of subsections (17)(B) and (17)(D).

In this instance, the legislative history of the relevant provisions "is fully consistent with its language." *Id.* at 44, 101 S.Ct. at 2640. The Eighty-Ninth Congress explained its purpose as follows:

Another provision is included that requires States to take into account only such income and resources as (determined in accordance with standards prescribed by the Secretary) are *actually available* to the applicant or recipient.... Income and resources taken into account, furthermore, must be reasonably evaluated by the States. These provisions are *designed so that the States will not assume the availability of income which may not, in fact, be available* or overevaluate income and resources which are available. Examples of income assumed include support orders from absent fathers, which have not been paid or contributions from relatives which are not in reality received by the needy individual.

The committee has heard of hardships on certain individuals by requiring them to provide support and to pay for the medical care needed by relatives. The committee believes it is proper to expect spouses to support each other and parents to be held accountable for the support of their minor children and their blind or permanently and totally disabled children even though 21 years of age or older. Such requirements for support may reasonably include the payment by such relative, if able, for medical care. *Beyond such degree of relationship, however, requirements imposed are often destructive and harmful to the relationships among members of the family group.* Thus, States may not include in their plans provisions for requiring contributions from relatives other than a spouse or the parent of a minor child or children over 21 who are blind or permanently and totally disabled. *Any contributions actually made by relatives or friends, or from other sources, will be taken into account by the State in determining whether the individual applying for medical assistance is, in fact, in need of such assistance.*

S.Rep. 404, 89th Cong., 1st Sess. 78 (Finance Committee) (June 30, 1965), *reprinted in* 1965 U.S.Code Cong. & Ad.News 1943, 2018; H.Rep. No. 213, 89th Cong., 1st Sess. 68 (Ways and Means Committee) (March 29, 1965) [emphasis added]. Although this 1965 provision sought to correct perceived failings in the then existing Kerr-Mills Medical Assistance Program for the Elderly which denied coverage to elderly individuals whose family had either the financial ability or the state law obligation to support them, its desire to prevent family discord cannot be limited to

cases where an adult child must support a geriatric parent. The Secretary's argument that such a shackle should be placed on Congressional sympathy is not supported by the legislative history which makes it clear "beyond doubt that Congress was wary of imputing the income of *others* to a Medicaid applicant." *Schweiker v. Gray Panthers*, 453 U.S. at 47, 101 S.Ct. at 2642 (emphasis added). Only the income of spouses and parents was thought to be a reasonable exception to the actual availability principle.

(b) *The Supreme Court Precedents Do Not Support the Secretary's Interpretation*

Given the contrary language and history of subsections (17)(B) and (17)(D), the Secretary rests her position on the premise that the Supreme Court has placed "the meaning of the term 'available' ... somewhere between the mere presumption of support (*i.e.*, deeming) and actual contributions." BFD, D.I. 31 at 20. The Secretary appears to misunderstand both the relationship between subsections 17(B) and 17(D) and its interpretation by the Supreme Court. While the Court has said that subsections 17(B) and 17(D) must be read together, *Herweg v. Ray*, 455 U.S. at 274, 102 S.Ct. at 1066, 71 L.Ed.2d 137, it has noted that "some tension exists between the Secretary's congressionally authorized power under subsection (17)(B) to determine what income is 'available' to the applicant and Congress' intent in subsection (17)(D)." *Id.* at 276, 102 S.Ct. at 1067. The Court has consistently interpreted "available" to mean *actually available* income plus that portion of *spouse or parent income* which

the Secretary has defined as available to the applicant. *See Herweg v. Ray*, 455 U.S. 265, 102 S.Ct. 1059 (the Secretary may *limit* spousal deeming to the time period ending one month after the applicant spouse has been institutionalized); *Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (the Secretary may impute a spouse's income to an institutionalized applicant without determining whether the income is actually in the hands of the applicant); *Lewis v. Martin*, 397 U.S. 552, 559–60, 90 S.Ct. 1282, 1285–86, 25 L.Ed.2d 561 ("[i]n the absence of proof of actual contribution, [the States] may not consider the child's 'resources' to include either the income of a nonadopting stepfather who is not legally obligated to support the child as is a natural parent, or the income of a MARS [man assuming the role of a spouse]—whatever the nature of his obligation to support.") At no time has the Court allowed the Secretary or any State agency to count income belonging to someone other than a spouse or parent as "available" to an applicant. *See Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282. Thus, the Court has not carved out an area of available income that lies between actually contributed and deemed income. Rather, it has determined that the Secretary may define as available to an applicant *all* his in hand income, whatever the source, plus the income of his parents or spouse, regardless of actual availability.[8] The latter sources are an exception to the general actually available principle solely because (17)(D) affirmatively permits such deemed income to qualify as available income. *See*

**8.** The Secretary cites the following passage from *Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460, BFD, D.I. 31 at 19–20, for the propositions (1) that "available" income is more than in hand income, and (2) that subsection (17)(D) allows the Secretary to "require contributions from that population denoted as 'financially responsible' by the statute": "'Available' resources are different from those *in hand*. We think that the requirement of availability refers to resources left to a *couple* after the spouse has deducted a sum on which to live. It does not, as respondent argues, permit the State only to consider the resources

actually paid by the spouse to the applicant." *Id.* at 48, 101 S.Ct. at 2642 (emphasis added). While the Secretary is correct in her belief that availability is not equatable with income actually received, she is wrong to extrapolate a general rule approving assumed contributions from the "financially responsible." None of the precedents extends the *Gray Panthers* principle beyond the persons enumerated in (17)(D), nor do they allow the Secretary to tie her (17)(B) power to the persons denoted to be "financially responsible" by the statute. Her ability to do the latter is *expressly* restricted by (17)(D).

*Schweiker v. Gray Panthers,* 453 U.S. at 47, 101 S.Ct. at 2642. Nothing in the Court's opinions suggests that such parental and spousal income is anything but deemed income. Since the sibling and grandparent income at issue here is not actually available to the applicants,[9] the Court's precedents compel the conclusion that the income is being "deemed" to the applicants. The Secretary's inference of an area between actual and deemed availability is, therefore, misplaced.

(c) *The Secretary's Prior Statements Belie Her Present Position*

The position taken by the Secretary in HCFA Regional Medicaid Letter No. 85–10 appears contrary to the one she espoused in a March 2, 1984 HCFA letter that assessed the effect of amendments made to AFDC by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324, on Medicaid eligibility. The issue framed by the Secretary was "whether provisions of section 1902(a)(10)(A)(ii)(I) and 1902(a)(10)(C)(III), which were added by TEFRA and require States to follow cash assistance program policy in determining financial eligibility for the optional categorically needy and medically needy, override section 1902(a)(17) of the Act which *limits consideration of income of financially responsible relatives to spouses and parents of individuals under age 21."* D.I. 33 at 18 (emphasis added). The TEFRA amendments authorized the deeming of stepparent and alien sponsor income to dependent children seeking cash assistance. "After careful review of [the] question," the Secretary concluded that the amendments could not "be considered self-implementing" because "there is a *conflicting requirement* in section 1902(a)(17). Therefore, States must follow the existing regulations at *42 C.F.R. 435.113,* 435.122 and Subparts G, H and I." *Id.* (emphasis added). In the letter's most significant paragraph, the Secretary noted:

While the Medicaid statute can be interpreted to support the regulations at 42 C.F.R. 435.113 and 435.122 it does not compel this interpretation and, therefore, does not require that section 1902(a)(17) of the Act override section 1902(a)(10) which requires that financial requirements and methodologies of the cash assistance program be employed for the categorically needy and medically needy. *However, interpretation of our regulations does compel such a reading. Therefore, a change in regulations would be required in order to change our policy in this area.*

*Id.* at 19 (emphasis added). Thus, when confronted with a closely analogous situation only a year earlier, the Secretary concluded that nothing short of a change in regulations would justify the result that she now seeks.[10] No such regulations have been issued. HCFA letter 85–10 is, therefore, inconsistent with the earlier interpretative pronouncements.

(D) *Section 2640 Did Not Alter the Meaning of Subsections (17)(B) and (17)(D)*

The language, legislative history, administrative interpretation and Supreme Court construction of subsection (17) could conceivably have been mooted by the articulation of a contrary congressional purpose in either the language or the history of section 2640. But the statutory language addresses itself solely to the provisions of AFDC. The legislative history is equally silent about any change in the purpose of subsection (17)(D). Nonetheless, the Secretary argues that "Congress' intent to fully utilize AFDC eligibility criteria and methodology for Medicaid purposes is clear." BFD, D.I. 31 at 21. She does not mention that the Ninety-Eighth Congress refused to pass a proposed section of DEFRA which would have authorized demonstration

---

**9.** If the income was actually available to the applicants, it would have been counted as available to them prior to passage of section 2640. *Schweiker v. Gray Panthers,* 453 U.S. at 45, 101 S.Ct. at 2641.

**10.** The Court need not decide at this time whether the Secretary is correct in her belief that the Medicaid statute does not compel the interpretation reached by the regulations.

projects in up to five States that conformed AFDC definitions and budgeting procedures with those of Medicaid or the Food Stamp program. H.R.Rep. No. 861, 98th Cong., 2d Sess. 1399 (Conference Committee), *reprinted in* 1984 U.S.Code Cong. & Ad.News 697, 1445, 2086. At the very least, this action suggests that Congress was willing to tolerate some inconsistencies between AFDC and Medicaid eligibility methodologies. The Court can discern no congressional mandate for requiring conformity between AFDC and Medicaid standards and refuses to fill the void by judicial fiat.

There is also no clear Congressional mandate for interpreting DEFRA's provisions in the manner most likely to effectuate deficit reductions. Senate Majority Leader Dole suggested that budget cutting was not the sole purpose of DEFRA's drafters: "we also made *modest increases* in the AFDC and SSI programs designed to aid those at the margin of our working population, and [provide] some *additional funds* to *Medicaid* partly offset by some modest reductions we had in the Senate bill." 130 Cong.Rec. 8373 (daily ed. June 27, 1984), *reprinted in* 1984 U.S.Code Cong. & Ad. News 2153 (emphasis added). Hence the Court cannot presume that Congress intended to cut Medicaid assistance to the needy simply because it reduced the availability of AFDC.

*(e) The Secretary Has Failed to Persuade Other Courts that Her Interpretation Deserves Substantial Weight*

Given the legislative history outlined above, it is not surprising that the four district courts which have confronted this issue and the one circuit court which has decided a similar issue, reached a result favorable to the Plaintiffs. Preliminary injunctive relief was ordered in both *Lutz v. O'Hara*, No. 85–4235, Order (W.D.Mo. May 17, 1985) (all parties stipulated to the entry of a preliminary injunction), and *Olson v. Reagen*, No. 85–101A, slip op. (S.D.Iowa Apr. 11, 1985) ("section 2640 and the Medicaid Act are inconsistent"). Plaintiffs were awarded summary judgment in *Vance v.*

*Hegstrom*, 629 F.Supp. 747 (D.Ore.1985), and *Gibson v. Puett*, 630 F.Supp. 542 (M.D.Tenn.1985). Each of the courts which wrote an opinion found the Secretary's interpretation contrary to subsection (17)(D). They also concluded that the plaintiffs remained categorically needy notwithstanding passage of section 2640.

In the analogous case of *Massachusetts Ass'n of Older Americans v. Sharp*, 700 F.2d 749 (1st Cir.1983), plaintiffs were granted preliminary relief against the denial of Medicaid benefits to persons disqualified from AFDC because of a stepparent deeming provision imposed by the Omnibus Budget Reconciliation Act of 1981 ("OBRA"), Pub.L. No. 97–35, 96 Stat. 843. OBRA required the States to consider the income of stepparents in determining a stepchild's eligibility for AFDC. *See* 42 U.S.C. § 602(a)(31) (as amended) (1981). The *Sharp* court unanimously found "the regulations [to] suggest that the applicants are still 'categorically needy' since the reason for their disqualification (stepparent income deeming) is expressly made irrelevant to Medicaid eligibility. *See* 42 U.S.C. § 1396a(a)(17)(D); 42 C.F.R. § 435.113." *Id.* at 753. It then concluded that plaintiffs had made an extremely strong showing of likelihood of success on the merits and issued the preliminary injunction.

■ This Court can discern no reason for differing with these courts. After reviewing the relevant legislative and judicial authorities, the Court finds that the Secretary's interpretation is inconsistent with the letter and purpose of the Medicaid Act as well as with her earlier regulatory and interpretative pronouncements because it requires the deeming of sibling and grandparent income. Under *Skidmore*, 323 U.S. at 140, 65 S.Ct. at 164, the Secretary's contention that the matter is settled by her (17)(B) authority deserves no weight or deference from this Court. Instead, we must determine ourselves whether the deeming of sibling and grandparent income is permissible under Medicaid.

### 3. IS THE DEEMING OF SIBLING INCOME PERMISSIBLE?

■ The characterization of section 2640 as a deeming provision is not necessarily fatal to Defendants' case because some deeming is clearly permitted by the Medicaid statute. *Schweiker v. Gray Panthers*, 453 U.S. at 45, 101 S.Ct. at 2641. However, the language and history of subsections (17)(B) and (17)(D), discussed *supra* at 594–596, do not support the deeming of sibling and grandparent income. The recent Medicaid decisions of the Supreme Court also suggest that deeming may not go beyond the parent and spouse relationship. In *Herweg v. Ray*, 455 U.S. 265, 102 S.Ct. 1061, which upheld the Secretary's authority to limit the State's deeming of income to an institutionalized spouse, the Court noted that subsection (17)(D) "prohibits the States from considering the financial responsibility of any individual for the Medicaid applicant *unless* that individual is the applicant's spouse or parent" (emphasis in original). *Id.* at 275 n. 13, 102 S.Ct. at 1067 n. 13. The Court added that *Herweg* would be a different case ... if the Secretary had sought to use his authority under subsection (17)(B) to *foreclose entirely* the States' ability to consider the income of the institutionalized applicant's spouse. Such a reading of the statute could well render subsection (17)(D) *superfluous.*" *Id.* at 277, 102 S.Ct. at 1067 (emphasis added). It seems clear that subsection (17)(D) would also be made superfluous by Secretary Heckler's current effort to foreclose the States from limiting deeming to spouses and parents. Language from *Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 makes this point explicit: "if there is to be content to subsection (17)(D)'s distinction between the responsibility of a spouse and that of a more distant relative, the subsection must envision that States can 'deem' the income of the former *but not the latter.*" *Id.* at 45, 101 S.Ct. at 2641 (emphasis added). The weight of this authority compels us to conclude that the deeming of sibling and grandparent income is prohibited by subsection (17)(D).

### 4. SUMMARY

The relevant legislative and judicial authorities have convinced this Court that the use of section 2640 of DEFRA to determine Medicaid eligibility contravenes the mandate of subsection (17)(D) of Title XIX. The Secretary's views do not deserve either legislative effect or substantial weight because they are wholly inconsistent with the legislative and judicial history of the statutes involved. The attribution of sibling income within the assistance unit clearly constitutes "deeming" as that term is understood in the Medicaid lexicon. The Secretary's semantic contortions cannot transform this "deemed" income into "available" income nor can they protect a practice inconsistent with the mandate of subsection (17)(D). We must conclude, therefore, that Plaintiffs are likely to prevail on the merits of this litigation.

### B. IRREPARABLE INJURY

To secure a preliminary injunction, Plaintiffs must establish that they will suffer irreparable injury absent the relief. *A.O. Smith Corp. v. Federal Trade Commission*, 530 F.2d at 525. A harm that is substantial or serious is not irreparable unless the injury is such that money damages are "difficult to ascertain or are inadequate." *Id.* at 525. The courts have recognized that injuries to health are irreparable. *See, e.g., Massachusetts Ass'n of Older Americans v. Sharp*, 700 F.2d at 753 (a "termination of benefits that causes individuals to forego ... necessary medical care is clearly irreparable.") The recent hospitalization of Curtis Malloy illustrates the risk presented if needy individuals are deprived of necessary medical care. If Curtis' severe asthma attack has caused permanent damage to his health, no order of this Court can restore what has been lost. Should a future attack cause either similar damage or a loss of life, this Court would be equally powerless to remedy the devastation.

Defendants argue that the risk of irreparable harm is removed by the availability of

alternative medical services. However, the only alternative that they have substantiated, an outpatient service offered by The Medical Center of Delaware, Inc. ("Medical Center"),[11] is a purely charitable program that fails to provide prescription medicines, transportation and many other essential services currently provided by Medicaid. Moreover, the Medical Center charges needy patients who use its facilities on a sliding scale-means test basis that it has constructed. Nothing prevents the Medical Center from mitigating its philanthrophy by increasing these fees or reducing or denying its services. Thus, Defendants are asking this Court to find that Plaintiffs will not suffer irreparable harm to their health on the fortuitous possibility that a charitable program which offers limited services and is subject to the exigencies of private sector budgeting will continue to exist. This we cannot do. Plaintiffs are, in all likelihood, categorically entitled to free medical care. To require that they seek care at a facility which they may not be able to afford or to reach, and which may not offer the help that they need, is to expose them to a considerable risk of irreparable injury. The Court finds that Plaintiffs have carried their burden on the issue of irreparable harm.

### C. THE DANGER TO OTHER PARTIES AND TO THE PUBLIC INTEREST

In this case, steps three and four of the *A.O. Smith* process can be taken together because the parties offer the same arguments on each point. Defendants contend that both they and the public will be harmed by Medicaid payments to the undeserving because such funds are usually unrecoverable. Plaintiffs respond that no one is harmed and that the public interest is in fact served by continued payments to the genuinely needy. Each argument is correct if its premise is accepted but only one premise about the Plaintiffs' status can be true here. Since the Court has already established that, in all likelihood, Plaintiffs deserve the benefits they seek, we conclude

that Plaintiffs have carried their burden on these issues also.

## IV

### CONCLUSION

Plaintiffs have satisfied both the Rule 23 requirements for class certification and the *A.O. Smith* criteria for preliminary injunctive relief. Consequently, this Court will enter an Order enjoining the Defendants from using section 2640 of DEFRA to determine eligibility for the Delaware Medicaid program. The Order will not affect the denial or termination of AFDC benefits effectuated by section 2640.

---

**11.** The Medical Center is a private not for profit corporation of the State of Delaware.