The **STATE OF GEORGIA DEPART-MENT OF MEDICAL ASSISTANCE, Petitioner,**

**v.**

**Otis R. BOWEN, et al., Respondents,**

**Rosemary Kelly, Ruby Oliver, Mary Briscoe and Harriet Gunter, Intervenors.**

**No. 87–8164.**

United States Court of Appeals, Eleventh Circuit.

June 8, 1988.

---

Thomas E. Harrison, Mobile, Ala., for defendant-appellant.

J.B. Sessions, III, U.S. Atty., Donna B. Roberts, Asst. U.S. Atty., Mobile, Ala., for plaintiff-appellee.

Before KRAVITCH, JOHNSON and EDMONDSON, Circuit Judges.

Kathryn Allen, Asst. Atty. Gen., Atlanta, Ga., for petitioner.

Phyllis J. Holmen, Atlanta, Ga., for intervenors.

Edgar M. Swindell, Asst. Regional Counsel, Office of General Counsel, U.S. Dept. of HHS, Atlanta, Ga., for respondents.

Before RONEY, Chief Judge, TJOFLAT, Circuit Judge, and CLEMON *, District Judge.

---

* Honorable U.W. Clemon, U.S. District Judge for the Northern District of Alabama, sitting by

RONEY, Chief Judge:

The legal issue in this case is whether the United States Department of Health and Human Services correctly disapproved a Medicaid state plan amendment submitted by the Georgia Department of Medical Assistance which proposed to afford categorical Medicaid eligibility to individuals without considering the income of relatives other than spouses or parents of dependent children, to be specific, without considering the income of siblings. The practical issue is whether the State of Georgia can provide Medicaid benefits to those individuals and be reimbursed by the federal Government. Since the State does not provide such benefits unless reimbursed, the real-life issue for the intervenor heads of families is whether their families will receive Medicaid benefits. We decide that the federal Government was wrong, and under the law, should have granted approval of the state plan.

Medicaid is a cooperative federal-state program established in 1965 as Title XIX of the Social Security Act, 42 U.S.C.A. § 1396 *et seq.* It provides payments for medical services rendered to certain needy individuals whose income and resources are insufficient to meet the costs of these services. 42 U.S.C.A. § 1396a; *Schweiker v. Gray Panthers,* 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). States are not required to participate in the Medicaid program, but if they choose to do so and if they comply with the requirements of the Act and the regulations promulgated by the Secretary, the federal Government reimburses them for a portion of the cost. 42 U.S.C.A. § 1396b.

There are two types of Medicaid beneficiaries, the "categorically needy" and the "medically needy." Participating states *must* provide assistance to the categorically needy, and *may* choose to provide assistance to the medically needy. This case involves the "categorically needy."

Those persons who receive federal aid through certain other cash assistance pro-

designation.

grams, such as Aid to Families with Dependent Children (AFDC) or Supplemental Security Income (SSI), are considered "categorically needy." Even if a person does not receive such aid, but would receive it but for an eligibility requirement that does not apply to the Medicaid program, he or she is still considered "categorically needy" and must be extended Medicaid benefits. It is this "but for" provision that is at the hub of this controversy. The Medicaid statute at 42 U.S.C.A. § 1396a(a)(17)(D) prevents a state from taking into account the financial responsibility of any individual for the claimant, unless the individual "deemed" to be responsible is the claimant's spouse or parent. Until 1984, this was also the rule for determining AFDC eligibility. But there was a change in the eligibility requirements for AFDC effected by the Deficit Reduction Act of 1984 (DEFRA). The DEFRA amendment to 42 U.S.C.A. § 602(a) provides that sibling income *must* be deemed available to the family unit in determining AFDC eligibility. DEFRA contained no amendments, however, specifically directed at section 1396a(a)(17)(D) of the Medicaid statute.

Thereupon, the legal issue was framed: is the eligibility requirement of AFDC that sibling income be deemed available for the family unit inapplicable to the Medicaid program, so that a family that would receive AFDC but for sibling deeming retains categorically needy status.

The Secretary relies heavily on the legislative history of DEFRA to support its disapproval of the State's proposed amendment. That history, according to the Secretary, indicates that Congress intended the change in the law to ensure that the income of family members who live together and share expenses is generally recognized and counted as available to the family as a whole.

The problem with the Secretary's litigation of its position here, however, is that the question has been addressed by a great number of courts and the Secretary's position has been uniformly rejected. *See Childress v. Bowen*, 833 F.2d 231 (10th Cir.1987); *Olson v. Norman*, 830 F.2d 811

(8th Cir.1987), *aff'g* 669 F.Supp. 282 (S.D. Iowa 1986) and 631 F.Supp. 154 (S.D. Iowa 1986); *Reed v. Blinzinger*, 816 F.2d 296 (7th Cir.1987), *aff'g* 639 F.Supp. 130 (S.D. Ind.1986); *Vance v. Hegstrom*, 793 F.2d 1018 (9th Cir.1986), *aff'g* 629 F.Supp. 747 (D.Or.1985); *Ward v. Wallace*, 652 F.Supp. 301 (M.D.Ala.1987), *amended* 658 F.Supp. 441 (M.D.Ala.1987); *Gibson v. Puett*, 630 F.Supp. 542 (M.D.Tenn.1985); *Malloy v. Eichler*, 628 F.Supp. 582 (D.Del.1986); *Sundberg v. Mansour*, 627 F.Supp. 616 (W.D. Mich.1986), *rev'd*, 831 F.2d 610 (6th Cir. 1987), *reh'g granted and opin. withdrawn*, 56 U.S.L.W. 2224 (6th Cir.), *aff'd by an equally divided court*, 847 F.2d 1210 (6th Cir.1988) *(in banc)*; *Mitchell v. Lipscomb*, No. 2:87–0279 (S.D.W.Va. Aug. 27, 1987); *Lutz v. O'Hara*, No. 85–4235 (W.D.Mo. May 17, 1985). Thus, the Secretary has lost this issue in the Seventh, Eighth, Ninth and Tenth Circuits and in every district court that has decided the issue in the Third, Fourth, Fifth, Sixth and Eleventh Circuits.

■ It is clear, of course, that an agency of the United States is not required to accept an adverse determination by one circuit court of appeals as binding throughout the United States. *Railway Labor Executives Ass'n v. I.C.C.*, 784 F.2d 959, 964 (9th Cir.1986); *see also Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir.1985) (holding generally that authority from one circuit is not binding on another). In *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), the United States Supreme Court held that nonmutual offensive collateral estoppel does not apply against the Government. In so holding, the Court extolled the virtues of what has been referred to as "percolation:"

A rule allowing nonmutual collateral estoppel against the Government ... would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue. Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeal to ex-

plore a difficult question before this Court grants certiorari.

*Id.* at 160, 104 S.Ct. at 572.

But there would seem to be some point when the Government should stop trying to treat citizens differently in different circuits and repair to the Congress for an implementation of its position, if indeed the governmental agency has correctly asserted the legislative position.

In cases involving statutory interpretation, principles of fairness, consistency and judicial and governmental efficiency militate against repetitious litigation.

> [T]here is ... merit in having federal courts follow the same course in cases of this kind in order to establish country-wide uniformity in the application of merely regulatory statutes and regulations. With no underlying ideological principles involved, the courts should not unnecessarily conflict on the application of regulatory laws such as the one at issue here. The Congress or administrative agency can readily change the rules if interpreted wrongly. In the meantime, all citizens are required to follow the same rules.

*Thomas v. Florida Power and Light Co.,* 764 F.2d 768, 770 (11th Cir.1985); *see also Butler County Memorial Hospital v. Heckler,* 780 F.2d 352, 356 (3d Cir.1985) (public policy favoring consistent application of rules of social welfare programs should make circuit court reluctant to contradict unanimous position of the other circuits). *See generally* Levin & Leeson, *Issue Preclusion Against the United States Government,* 70 Iowa L.Rev. 96 (1984); Note, *Collateral Estoppel and Nonacquiescence: Precluding Government Relitigation in the Pursuit of Litigant Equality,* 99 Harv.L.Rev. 847 (1986).

When this case was argued, three circuit courts of appeals had rejected the position taken by the Secretary. Now there are four. On this ground alone, we would choose the path of uniformity and reverse the decision of the Secretary disapproving the State's proposed amendment to its Medicaid plan.

The result that we would thus reach is reinforced by examination of the merits of the controversy. On the merits, we would follow the analysis and the reasoning of the Ninth Circuit, the first to decide the issue, in *Vance v. Hegstrom,* 793 F.2d 1018 (9th Cir.1986). In our judgment, that court correctly held that the Secretary's position is wrong because of the plain language of 42 U.S.C.A. § 1396a(a)(17)(D), which by its words prevents sibling deeming, and because the legislative history of DEFRA does not express any intent to change that provision. The other circuits have essentially followed that opinion in rejecting the Secretary's position.

At oral argument and in subsequent communication, the Secretary suggested two matters that arguably could bear on a merits decision, apparently not before the other courts. First, shortly after the passage of DEFRA, Congress enacted 42 U.S.C.A. § 606(h), the purpose of which was to provide a four-month period of transitional Medicaid coverage for families who were terminated from AFDC based on their receipt of increased child support payments, and that Congress has recently considered extending this transitional coverage to six months. The Secretary contends that this statute would be "wholly unnecessary" if 42 U.S.C.A. § 1396a(a)(17)(D) insulates families from sibling deeming in determining Medicaid coverage. The State and the intervenors, however, assert that section 606(h) can be interpreted in a manner entirely consistent with their reading of section 1396a(a)(17)(D) and that section 606(h) in fact demonstrates congressional reluctance to remove poor families from the scope of Medicaid coverage.

Second, in December 1987, as part of the Omnibus Budget Reconciliation Act, Congress amended the Medicaid statute as it pertains to certain pregnant women and children and specifically provided that AFDC "deeming" provisions would not apply to those individuals. In conjunction with this legislation, the House Budget Committee made the following remarks:

> [The] AFDC [program features] policies [which] are referred to as step-parent, grandparent and sibling "deeming,"

respectively, because the income of family members is conclusively presumed to be available to the child.... These AFDC stepparent, grandparent and sibling deeming rules do not apply, and have never applied, to determinations of eligibility for Medicaid, however. Medicaid law and regulation have long limited "deeming," or the attribution of financial responsibility of other family members, to two specific circumstances: spouses are responsible to their spouses, and parents are responsible to their minor children. [The Secretary] has attempted to require the States to apply AFDC step-parent, grandparent and sibling deeming rules in determining eligibility for Medicaid, evidently for the purpose of denying needed health coverage to low-income women and children. The two Federal Circuit Courts of Appeals and the 8 Federal District Courts that have ruled on this issue to date have all concluded, quite correctly, that [the Secretary] is in error.

H.R.Rep. No. 391, 100th Cong., 1st Sess. 446–47, *reprinted in* 1988 U.S.Code Cong. & Admin.News 2313–1, 2313–266, 2313–267. These statements could be argued to support the position of the State and the intervenors because they show both Congressional regard for the Medicaid program and a recognition that AFDC and Medicaid are not entirely co-extensive, but are linked only in certain areas. The Secretary, however, suggests that this sort of post-enactment "legislative history" is not at all conclusive on the issue of Congressional intent in DEFRA.

█ We have examined both of the new arguments presented and find that in neither instance would they change the decision on the merits. We are simply unwilling to presuppose that when Congress changes AFDC eligibility standards, it intends also to change Medicaid eligibility standards. Indeed, that it is logical to differentiate between AFDC eligibility and Medicaid eligibility is reflected by the nature of the benefits. The kind of benefits for which AFDC provides, housing and food, are shared by family members, so it could be argued that all of the financial resources of the family should be pooled in determining whether AFDC assistance is required. Medicaid benefits, however, are not shared in this manner, but rather pay for individual health care only, and do not become a part of a common resource. Thus, while the policy that all family members should contribute to the family's communal expenses may be persuasive in the AFDC context, it has no applicability in the Medicaid context where the assistance is not used for a communal expense.

The petition for review is GRANTED and the Secretary's order disapproving the State's proposal is set aside. *See* 42 U.S.C. A. § 1316(a)(5).