Brenda MALLOY and Nereida Gutierrez, on their own behalf and as parents and next friends of Curtis Malloy, Timothy Malloy and William Gutierrez, their minor children, and Carolyn ʹMarsh and Esperanza Rodriquez, et al.

v.

Thomas EICHLER, in his official capacity as the Secretary of the Delaware Department of Health and Social Services, and Phyllis Hazel, in her official capacity as Director of the Department's Division of Economic Services, et al.

Appeal of SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES of the United States of America, in No. 88–3094.

Maria ROSADO, Priscilla Golden, Angelica Saldana, Sharon Thomas, Norma Taylor, Nydia Cruz, each individually and on behalf of their respective plaintiff minor children and on behalf of all other persons in New Jersey similarly situated

v.

Otis R. BOWEN, Secretary of Health and Human Services, and Gregory S. Perselay, Acting Commissioner of the New Jersey Department of Human Services.

Appeal of Otis R. BOWEN, Secretary of Health and Human Services, in No. 88–5149.

Nos. 88–3094, 88–5149.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit Rule 12(6) July 18, 1988.

Decided Oct. 25, 1988.

Beverley Dennis, III, Chief Counsel, Region III, James C. Newman, Supervisory

Asst. Regional Counsel, Javier A. Arrastia, Asst. Regional Counsel, Dept. of Health & Human Services, Philadelphia, Pa., William C. Carpenter, U.S. Atty., Kent A. Jordan, Asst. U.S. Atty., D. Del., Wilmington, Del., Samuel A. Alito, Jr., U.S. Atty., Cornelia E. Dude, Asst. U.S. Atty., D. N.J., Newark, N.J., for appellant.

Harris David, Legal Services of New Jersey, New Brunswick, N.J., Richard Foard, Michaelene Loughlin, Essex–Newark Legal Services ACLU of New Jersey, Newark, N.J., Jack Fitzgerald, Warren County Legal Services, Belvidere, N.J., for appellees.

Before HIGGINBOTHAM, BECKER and ROSENN, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is a consolidated appeal from the judgments in two separate class actions, *Malloy v. Eichler*, 628 F.Supp. 582 (D.Del. 1986), *reprinted in* Joint Appendix (hereinafter Jt.App.) at 6, and *Rosado v. Bowen*, 698 F.Supp. 1191 (D.N.J.1987), *reprinted in* Jt.App. at 56. Both plaintiff classes sought to enjoin the state and federal officials who administer the Medicaid program from using section 2640 of the Deficit Reduction Act of 1984 ("DEFRA"), 42 U.S.C. § 602(a)(38)) (Supp.1988) (hereinafter section 2640), an amendment to the AFDC statute, to determine eligibility for Medicaid coverage. The district courts granted these injunctions. We will affirm.

### I.

In *Malloy*, plaintiffs filed a proposed class action against the Delaware state officials responsible for administering and for supervising the administration of the Medicaid program in Delaware ["Delaware state defendants"]. Plaintiffs asked the court to enjoin Delaware's practice of terminating Medicaid benefits for Delaware children and their caretaker relatives who would have been eligible for AFDC but for section 2640 of DEFRA. The District Court granted the Delaware state defend-

ants' motion to add the Secretary as a necessary party defendant. The court then entered an order and a declaratory judgment holding that the Secretary's "practice or policy of deeming the income of siblings or grandparents to individual Medicaid applicants or recipients pursuant to § 2640(a) of DEFRA ... violates Medicaid law now codified at 42 U.S.C. § 1396a(a)(17) and the regulations promulgated thereunder." *Malloy v. Eichler, Judgment and Order Against the Federal Defendant, reprinted in* Jt.App. at 48–50. Only the Secretary chose to appeal this judgment.

In *Rosado*, plaintiffs filed a proposed class action directly against the Secretary and against Geoffrey S. Perselay, the Acting Commissioner of the New Jersey Department of Human Services, as the officials responsible for administering the New Jersey AFDC and Medicaid programs. Unlike the plaintiffs in *Malloy*, plaintiffs in *Rosado* challenged the constitutionality of § 2640 of DEFRA as well as its application to Medicaid eligibility. The Supreme Court upheld the constitutionality of § 2640 in *Bowen v. Gilliard*, — U.S. —, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1). Accordingly, the District Court granted summary judgment to the Secretary on that issue. *Rosado, reprinted in* Jt.App. at 66–69, 88–89. However, the *Rosado* court agreed with the *Malloy* court that one of the Medicaid eligibility provisions, 42 U.S.C. § 1396a(a)(17)(D), specifically prohibited the use in the Medicaid context of section 2640's assumption that the income of any child in the family was available to the whole household as income. *Malloy, reprinted in* Jt.App. at 83–86.

### II.

The Medicaid program was established under Title XIX of the Social Security Act, 42 U.S.C.A. §§ 1396–1396s (Supp. 1). It is a cooperative program whereby the federal and state governments share the costs of medical treatment for needy individuals. States are not obligated to participate, but, if a state chooses to do so, it must comply with the federal requirements for the pro-

gram. In return, it receives substantial federal matching funds.

Participating states must provide assistance to all individuals specified as "categorically needy." 42 U.S.C. § 1396a(a)(10)(A). This group includes, among others, AFDC recipients, under Title IV–A of the Social Security Act, 42 U.S.C.A. § 601 et seq. However, persons who would be eligible for AFDC except for an eligibility requirement used in the AFDC program that is specifically prohibited under Medicaid have historically been eligible for Medicaid. 42 C.F.R. § 435.113 (1982). Medicaid eligibility is thus closely linked to, but not perfectly coextensive with, AFDC assistance. How coextensive is what is at issue in this case.

### III.

The Secretary argues that Congress' amendment of the AFDC program to treat sibling income as available to all members of a family receiving AFDC should control family income determinations for Medicaid eligibility as well. Understanding the Secretary's contentions thus requires an understanding of the AFDC eligibility requirements. Like Medicaid, AFDC is funded cooperatively by the federal and state governments, with states administering the program locally and complying with federal requirements in return for federal funding. AFDC is available to dependent children in households where one parent is absent or is physically or mentally incapacitated.

A family applies for AFDC as a family "filing unit." To qualify for assistance, a filing unit must meet specified standards of financial need. 42 U.S.C.A. § 606(a)(1). Prior to DEFRA, a family could apply as a filing unit for assistance without including all of its members in the filing unit. At that time, families routinely excluded children with significant incomes from the AFDC filing unit to avoid reducing a family's overall eligibility for benefits. This practice had a legal basis. The normal sources of outside income for children in these households is court-ordered child support or Social Security payments received by a child on behalf of a deceased parent.

Prior to DEFRA, caretaker relatives could not legally spend Social Security income to satisfy the needs of anyone except the beneficiary child, see Jt.App. at 122, 125, and state law often required a caretaker relative to use child support only to the benefit of the supported child, Bowen v. Gilliard, —— U.S. ——, 107 S.Ct. 3008, 3016 n. 14, 97 L.Ed.2d 485(1). Permitting families to exclude children with dedicated income from filing units recognized these legal strictures. A minor parent living with her own parents was also permitted to apply with her child(ren) as a filing unit, omitting details of her own parents'—the child(ren)'s grandparents'—financial needs and resources.

Among other changes in AFDC eligibility requirements, Section 2640 of DEFRA amended § 402(a)(38) of the Social Security Act, 42 U.S.C. § 602(a)(38) (Supp.1988) to provide, in pertinent part:

"A State plan for aid and services to needy families with children must—

.    .    .    .    .

"(38) provide that in making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), the State agency shall (except as otherwise provided in this part) include—

"(A) any parent of such child, and

"(B) any brother or sister of such child, such brother or sister meets the conditions described in clauses (1) and (2) of section 606(a) of this title, if such parent, brother, or sister living in the same home as the defendent child and any income of or available for such parent, brother, or sister shall be included in making such determination and applying such paragraph with respect to the family (notwithstanding section 405(j) of this title, in the case benefits provided under subchapter II of this chapter)...."

State AFDC officials now automatically treat Social Security benefits or child support benefits received on behalf of one child, as well any grandparent income in three-generation households including a minor parent, as available to the whole family. As a result, many families no longer

receive AFDC. Under the Secretary's regulations, families whose total income makes them ineligible for AFDC benefits are also no longer eligible for Medicaid coverage.

■ The Secretary argues that his official interpretation of section 2640—that its inclusion of sibling and grandparent income in an applicant's resources extends to Medicaid eligibility decisions—was issued pursuant to Congress's broad delegation of authority to him to determine the amount of income available to Medicaid applicants. Appellant's Brief at 9–13. However, in our review, we must determine whether the Secretary properly construed the scope of his statutory authority in making his decision. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136(1). An administrator's statutory authority does not extend to promulgating regulations or interpretations inconsistent with the statutes that he or she is charged with enforcing. *See, e.g., Immigration & Naturalization Service v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 1217, 1223, 94 L.Ed.2d 434(1); *Herweg v. Ray*, 455 U.S. 265, 275, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137(1); *Morton v. Ruiz*, 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1). The narrow issue in this case is whether the Secretary's interpretation of section 2640 conflicts with the Medicaid statute. We hold that it does and that therefore the Secretary's interpretation exceeds the statutory authority delegated to him by Congress.

## IV.

The Secretary argues that his interpretation of Medicaid eligibility is consistent with the intent of Congress. Specifically, he argues that his interpretation does not contradict 42 U.S.C. § 1396a(a)(17)(D) and, moreover, that it fulfills the requirements of 42 U.S.C. § 1396a(a)(17)(B). Accordingly, the Secretary argues that his construction of the Medicaid statute is entitled to "great deference." Appellant's Brief at 9.

The Secretary's position has been uniformly rejected in the eighteen circuit and district courts which have considered it.

*See Georgia Department of Medical Assistance v. Bowen*, 846 F.2d 708, 710 (11th Cir.1988) (collecting cases); *see, e.g., Vance v. Hegstrom*, 793 F.2d 1018, 1024 (9th Cir. 1986) ("[i]n structuring a Medicaid filing unit by defining it in such a way as to include sibling income, the Secretary is doing ... that which he is expressly precluded from doing by subsection (17)(D)"); *Malloy v. Eichler*, 628 F.Supp. 582, 598 (D.Del. 1986) ("[t]he Secretary's semantic contortions cannot transform this 'deemed' income into 'available' income nor can they protect a practice inconsistent with the mandate of subsection (17)(D)"); *Rosado v. Bowen, reprinted in* Jt.App. at 86 ("[t]he unambiguous language of § 1396a(a)(17)(D) specifically prohibits deeming a sibling's income for determining Medicaid benefits.... the impropriety of the Secretary's interpretation is apparent"); *Ward v. Wallace*, 652 F.Supp. 301, 305 (M.D.Ala.1987), *extended sub nom. Ward v. Hunt*, 658 F.Supp. 441 (M.D.Ala.1987) ("[i]n his effort to support his interpretation on including sibling income, the Secretary makes interesting, but nonetheless tortured and meritless, attempts to evade the Medicaid restrictions of subsections (17)(B) and (D)"). The Secretary argues that these eighteen prior decisions on this issue ignore relevant legislative history and "[t]he domino-like decisions of the other courts do not bear scrutiny." Appellant's Brief at 13.

The Secretary argues that the decisions in *Rosado* and *Malloy* are wrong as a matter of law, because his interpretation accords with the language of 42 U.S.C. § 1396a(a)(17)(B) and (D). He also argues that the absence of a mention of Medicaid in section 2640 creates a statutory ambiguity in section § 1396a, Appellant's Reply Brief at 2; *cf.* 2–5, which can be clarified by consulting legislative history that, he argues, supports his interpretation of the statute. We are unpersuaded by both of these arguments. We hold that the language of 42 U.S.C. § 1396a(a)(17) is clear, unambiguous, and contrary to the Secretary's interpretation. We also hold that the legislative history cited by the Secretary does not provide persuasive evidence that his interpretation effectuates Congres-

sional intent, let alone the clear and manifest evidence of Congressional intent required to contravene clear statutory language.

## V. The Relevance of Legislative History.

■ Where the language of the statute is clear, only "the most extraordinary showing of contrary intentions" justify altering the plain meaning of a statute. *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984); *reh'g. denied,* 469 U.S. 1230, 105 S.Ct. 1235, 84 L.Ed.2d 371 (985). *See also TVA v. Hill,* 437 U.S. 153, 187 n. 33, 98 S.Ct. 2279, 2298 n. 33, 57 L.Ed.2d 117 (1978) (in dealing with unambiguous statutory language, judicial interpretation should stop with the words of the statute except in " 'rare and exceptional circumstances' ") (quoting *Crooks v. Harrelson,* 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930)); *Vance v. Hegstrom,* 793 F.2d 1018, 1023 (9th Cir.1986) ("[t]he plain meaning of the words chosen by Congress is controlling in the absence of a clearly expressed legislative intent"). As we discuss below, 42 U.S. C. § 1396a(a)(17)(D) is unambiguous and expressly precludes the Secretary's interpretation. Accordingly, we will address the Secretary's legislative history arguments only to demonstrate that the Secretary has not produced the extraordinarily clear evidence of a contrary legislative intent that is required to override clear statutory language.

### A. The Language of the Statute is Plain and Unambiguous.

The plain language of the statute states the Secretary may set standards for Medicaid eligibility provided that these standards

(B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and ...

(D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 or ... is blind or permanently and totally disabled

. . . .

42 U.S.C. § 1396a(a)(17). The House Committee explained the purpose behind these requirements:

Your committee believes it is proper to expect spouses to support each other and parents to be held accountable for the support of their minor children.... Such requirements for support may reasonably include the payment by such relative, if able, for medical care. Beyond such degree of relationship, however, requirements imposed are often destructive and harmful to the relationships among members of the family group.

H.R.Rep. No. 213, 89th Cong., 1st Sess. 68 (1965). Neither the plain language of the statute nor its legislative history suggests that this provision would nonetheless hold minor children accountable for the medical care of their half-siblings, or grandparents for their grandchildren's care.

### 1. Sibling deeming.

The Secretary's attempt to reconcile his interpretation with this statute is unconvincing. The Secretary argues that the effect of these provisions was fundamentally changed when Congress enacted section 602(a)(38). Appellant's Brief at 22. As he puts it, "by mandatorily including siblings in the [AFDC] filing unit under § 602(a)(38), Congress made their income 'available' within the meaning of 42 U.S.C. § 1396a(a)(17)(B)." *Id.* at 9. The Secretary thus asserts that DEFRA should be read into the definition of "available" in the preceding statute: "Sibling income *voluntarily* contributed to the AFDC unit prior to 1984 would have been counted in determining ... Medicaid eligibility. As a result of DEFRA, such voluntarism is no more, and this income *must* be counted for AFDC eligibility, and, the Secretary maintains, for a family unit's derivative Medicaid eligibility." *Id.* at 22.

A change in statutory language does not necessarily make money actually available

to an applicant where it had not been before. If, as the Secretary argues, one child's income is actually available to other family members for their medical care, it has become so as a result of assuming that that child's resources are available to satisfy the needs of others; the family's AFDC benefits and Medicaid coverage have been cut off as a result of counting the child's Social Security benefits or child support check as family filing unit income. This attribution of one child's income to the whole family has the effect of making that child financially accountable for the needs of his relatives—in violation of 42 U.S.C. § 1396a(a)(17)(D)'s requirement that relatives may be held accountable for the medical needs of others only within the spousal and parent-minor or -disabled child relationships.

### 2. *Grandparent deeming.*

Similar logic explains why grandparent deeming also conflicts with subsection (a)(17)(D) of the Medicaid statute. The Secretary has admitted that grandparent deeming from outside the assistance unit is contrary to (a)(17)(D) and so impermissible. Appellant's Brief at 25–26. Since the plaintiff classes did not provide examples of Medicaid recipients or applicants denied Medicaid as a result of grandparent deeming, we will treat this as a party admission that grandparent deeming from outside the assistance unit is impermissible. However, grandparent deeming does occur under the Secretary's interpretation of 42 U.S.C. § 602(a)(38), when a minor parent lives in the household with her own parents. Because she is a minor, her parent(s) must also apply for public assistance as part of the filing unit. The filing unit of minor parent and child thus includes the minor parent's parent(s), the dependent child's grandparent(s). The grandparent(s)'s income is considered available to the whole filing unit. To the extent that this renders the grandparents financially responsible for their own minor child, this method of determining eligibility is permissible under subsection (a)(17)(D). However, to the extent that the grandparents' income is considered available to the entire filing unit,

including the minor parent's child, this methodology violates subsection (a)(17)(D). The grandparents are neither the spouse nor the parent of their own child's child. As the Supreme Court recently stated in *Schweiker v. Gray Panthers*, 453 U.S. 34, 45, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981), "if there is to be content to subsection (17)(D)'s distinction between the responsibility of a spouse and that of a more distant relative, the subsection must envision that States can deem the income of the former but not of the latter."

The plain meaning of the statute discussed above is particularly likely to express Congressional intent since Congress might have chosen to treat sibling income as part of a common pool in the AFDC context, but not with regard to Medicaid, because of the sharply different nature of the needs served by each program. Food, heat and shelter costs, the stuff of ADFC, are more communal goods than is medical care. A gallon of milk is cheaper per glass than a quart; up to a point, dollars spent on rent can shelter one child or several. Medical care, by contrast, is an individual good: a doctor's visit, an injection of penicillin, can only cure one patient. Thus, given Congress's clear expression of its intent that income should not be presumed available to others in the Medicaid context outside the parent-child and spousal relationships, and the significantly different nature of the goods and services involved, the Secretary's argument that Congress's expression of its intent in the AFDC context means that "the rules changed" for Medicaid is unconvincing.

### B. *The Secretary's Arguments That the Statute is Ambiguous.*

The Secretary's argument that subsection (17)(D) is ambiguous rests on his misleadingly erroneous characterization of the relation of Medicaid eligibility as determined by or "derivative" of AFDC eligibility. Appellant's Brief at 15–16, 22. Because, the Secretary argues, Medicaid eligibility is derivative of AFDC eligibility, "the lack of explicit reference to Medicaid and the general, long-established linkage be-

tween Medicaid and AFDC eligibility are sufficient to create the statutory obscurity or ambiguity denied by appellees in their repeated insistence on the alleged plain meaning of the statute as a sufficient guide to interpretation." Appellant's Reply Brief at 2, *cf.* 2–5. This argument rests on a confused appreciation both of the relationship between Medicaid and AFDC eligibility requirements and of the principles of statutory construction. We will address each of these problems in turn.

### 1. *The Relationship Between AFDC and Medicaid Eligibility.*

■ Medicaid eligibility is not "derivative" of, or perfectly coextensive with, AFDC eligibility—as the Secretary's own regulation shows. The Secretary has promulgated a regulation stating that "[t]he agency must provide Medicaid to individuals who would be eligible for AFDC except for an eligibility requirement used for that program that is specifically prohibited under Title 19 [the title of the Social Security Act concerning Medicaid]." 42 C.F.R. 435.113 (1982). Since DEFRA, sibling deeming is such an eligibility requirement—permissible under AFDC law, explicitly forbidden by Title XIX. The very existence of the Secretary's own regulation acknowledges that AFDC eligibility requirements do not define eligibility for Medicaid. Moreover, in December 1987, as part of the Omnibus Budget Reconciliation Act, Congress enacted legislation providing Medicaid coverage for pregnant women and some children. This legislation explicitly provides that AFDC eligibility requirements shall not apply to determine the eligibility for this program. In discussing this legislation, the House Budget Committee observed that

> [The] AFDC [program features] policies [which] are referred to as stepparent, grandparent and sibling 'deeming,' respectively, because the income of these family members is conclusively presumed to be available to the child.... These AFDC stepparent, grandparent and sibling deeming rules do not apply, and have never applied, to determinations of eligibility for Medicaid, however.

Medicaid law and regulation have long limited 'deeming,' or the attribution of financial responsibility of other family members, to two specific circumstances: spouses are responsible to their spouses, and parents are responsible to their minor children.... The two Federal Circuit Courts of Appeals and the 8 Federal District Courts that have ruled on this issue to date have all concluded, quite correctly, that [the Secretary] is in error.

H.R.Rep. No. 391, 100th Cong., 1st Sess. 446–47, *reprinted in* 1987 U.S.Code Cong. & Admin.News 2313–1, 2313–266, 2313–267. Whatever the value of these statements as evidence of the correctness of the other court decisions, the Committee's observations, and the program that it interprets, do indicate that Medicaid eligibility requirements at least in some instances differ from those for AFDC.

### 2. *The Meaning of Silence in Statutory Interpretation.*

As noted above, based on his erroneous argument that AFDC eligibility requirements always determine those of Medicaid, the Secretary also argues that Congress's failure to mention Medicaid in an amendment to the AFDC statute creates a statutory ambiguity. Congressional silence does not connote ambiguity in this case. The relevant maxim of statutory construction is *expressio unius exclusio alterius*, that is, "the expression of one thing is the exclusion of another," and may imply an intent to exclude all others. Therefore, if Congress chose explicitly to amend the AFDC requirements, the appropriate inference is that it chose to amend only those, not others. Moreover, the position for which that the Secretary argues amounts to *sub silentio* repeal of subsection (17)(D)'s prohibition on deeming outside the spousal and parent-minor child relationships. We must assume that Congress was aware of subsection (17)(D) when it enacted the AFDC amendments, *see Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979), but chose not to repeal or amend it. Repeals by implication are not favored. The "intention of the legisla-

ture to repeal must be 'clear and manifest'." *Watt v. Alaska*, 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981) (citations omitted). As the survey of the legislative history below will show, Congress has not manifested an intent to repeal or amend subsection 17(D). We find the Secretary's argument that section 2640 is ambiguous because it does not mention Medicaid to be wholly without merit.

## VI. *The Legislative History Cited By the Secretary.*

Since subsection (17)(D) is clear and unambiguous, we analyze the legislative history adduced by the Secretary solely for the "extraordinary evidence of contrary intentions" necessary to support an interpretation contrary to the plain language of the statute. The legislative history stressed by the Secretary consists principally of non-specific references to Medicaid savings, several of them from the legislative histories of other statutes, and a general observation that Congress enacted DEFRA as part of an attempt to reduce the federal budget deficit. Contrary to the Secretary's assertion that courts have ignored these references, several courts have considered them, but found them unpersuasive. *See, e.g., Vance v. Hegstrom*, 793 F.2d 1018, 1024–25 (9th Cir.1986); *Olson v. Norman*, 830 F.2d 811, 817–18 (8th Cir.1987); *Malloy v. Eichler*, 628 F.Supp. 582, 594–95, 596–97 (D.Del.1986); *Rosado v. Bowen*, Civ. No. 86–1716, Jt.App. at 83 (D.N.J. Oct. 22, 1987). So do we.

Even the Secretary's "best" legislative argument rests on a strained interpretation of the statute involved. The Secretary invokes Congress's 1984 amendments to the CSEA to "demonstrate that Congress assumed families losing AFDC eligibility due to the counting of *sibling income* would lose Medicaid as well. 42 U.S.C. § 606(h)." Appellant's Brief, at 16 (emphasis added). Section 606(h) does provide a four month grace period of continued Medicaid coverage for former AFDC recipients who have also lost their eligibility for Medicaid due to child support collections. But the source of their loss in this case is the receipt of *child support*, which does not necessarily imply

sibling deeming. It is only where the household consists of two or more children who are half-siblings, and only one absent parent is paying child support, that the collection of support for one child causes another child to lose AFDC benefits and, under the Secretary's erroneous interpretation, Medicaid coverage. Where a family consists, as all families do at their inception, of the parent(s) and the first child, the receipt of that child's support payments will automatically, if the amount of the support is large enough, move the household off both the AFDC and the Medicaid rolls—without involving sibling deeming. Similarly, in a family of two or more children where all the children are of one parentage, or where each child is receiving support, each child could begin to receive child support as a result of the federal collection program without any child's income being imputed to her sibling. Congress could wish to alleviate the difficulties of these common situations without implying that the Secretary should amend the Medicaid statute *sub silentio* to permit sibling deeming.

The language of the House Conference Report that the Secretary quotes is consistent with the interpretation that we have outlined above. The report simply states that "[w]hen a family loses eligibility for AFDC as the result of child support collections, it also loses categorical eligibility for medicaid.... the States must continue to provide medicaid benefits for 4 calendar months...." H.R.Conf.Rep. No. 925, 98th Cong., 2d Sess. 55, *reprinted in* 1984 U.S. Code Cong. & Admin.News 2397, 2447, 2473. Nowhere does this language explicitly state that the consequence of receiving child support for one child is the loss of Medicaid coverage for others. Congress need not have had this problem in mind. As discussed above, the Medicaid statute specifically prohibits considering the income of a sibling available to an applicant, whereas it does not prohibit the consideration of a parent's resources, represented by the support sent specifically for the child-applicant in question, in evaluating an applicant's eligibility. Since a child therefore

may lose Medicaid coverage when *he* or *she* receives child support from his or her own parent, but *not* when a half-sibling receives it from the parent that the two children do not share, Congress had no need either to discuss or to remedy this nonexistent problem.

The Secretary next points to vague and confusing references to Medicaid savings in estimates of the fiscal impact of AFDC legislation. Firstly, the Senate Finance Committee noted that the Administration is proposing "several changes" in AFDC. They predicted that "[s]ince Medicaid eligibility is linked to eligibility for AFDC, Medicaid savings are also anticipated." Staff of Senate Comm. on Finance 98th Cong., 2d Sess., Staff Data and Materials for the Fiscal Year 1985, Finance Committee Report Under the Congressional Budget Act 61 (Comm.Print 1984). It is unclear which of the several proposals the Finance Committee intended. For example, one of the AFDC proposals would have made minor parents ineligible for AFDC unless they resided with their own parent(s), or unless their parents were dead or would jeopardize the health and safety of the minor or her child(ren). The prior practice had permitted any minor parent to apply for AFDC on behalf of her child regardless of where she was living. The new practice would reduce the number of AFDC recipients, assuming that some minor parents continue to be unwilling to live with their own parents and so lose AFDC eligibility. Loss of AFDC eligibility means loss of Medicaid eligibility in many states, unless the AFDC loss is the consequence of an eligibility requirement like sibling deeming specifically forbidden under the Medicaid program. By contrast, requirements that parents support and provide medical care for their minor children (though not their grandchildren) are explicitly permissible under the Medicaid statute.

42 U.S.C. 1396a(a)(17)(D). Thus, this different provision, one of the several, would almost certainly produce Medicaid savings. Since the Senate Finance Committee did not specify which proposal it had in mind, or how exactly the savings would occur, this reference to savings is only ambiguous evidence that the Senate expected the change in the AFDC eligibility requirements to produce Medicaid savings.

The Secretary then cites the comments of the Congressional Budget Office as evidence that the CBO and the Senate[1] "agreed that the standard filing unit provision would have an impact in determining Medicaid eligibility." Appellant's Brief at 20. This is evidence that would support the government's position, were it not for the fact that the CBO thought that Medicaid costs would go *up*, not down, as a result of section 2640. It predicted that "[c]hanging the AFDC filing unit would result in state savings in AFDC and state *costs* in Medicaid." Jt.App. at 108 (emphasis added). These increased costs may have stemmed from the CBO's assumption that the provision would result in reduced AFDC for many families but in *increased* Medicaid eligibility for approximately 300,000 families. Jt. App. at 94. The CBO's fiscal observations simply cannot be construed to support the Secretary's overall position that reducing AFDC eligibility automatically reduces an applicant's Medicaid eligibility.

Much of the other legislative history that both sides cite is either from noncontemporaneous Congresses or consists of references from the legislative histories of other laws. *See e.g.,* Appellees' Brief at 9; Appellant's Brief at 20 n. 4. The Supreme Court has noted that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Waterman S.S. Corp. v. United States,*

---

1. The Secretary cites this as evidence that the House, Senate and CBO were all in agreement. This statement harbors a further error. The House Ways and Means committee print quoted by the Secretary merely summarizes "Administration estimates" and Administration predictions before moving on to the conflicting estimates and predictions of the Congressional Budget Office. The House did not endorse the Administration's estimates in this document any more than it endorsed the CBO's. At best, the paragraph indicates that the CBO and the Administration both expected section 2640 to have fiscal impact—but disagreed diametrically in the Medicaid context as to whether it would lower Medicaid costs or raise them.

**1188**

381 U.S. 252, 269, 85 S.Ct. 1389, 1398, 14 L.Ed.2d 370 (1965), *reh'g. denied*, 382 U.S. 873, 86 S.Ct. 17, 15 L.Ed.2d 114 (1965) (quoting *United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960)). Similarly, the Secretary's citations the Senate Finance Committee reports on a provision similar to DEFRA, but one not passed by Congress, *see* Appellant's Brief at 20 n. 4, are only slightly helpful: "unsuccessful attempts at legislation" are "not the best of guides to legislative intent." *Red Lion Broadcasting Co. v. Federal Communications Commission*, 395 U.S. 367, 382 n. 11, 89 S.Ct. 1794, 1802 n. 11, 23 L.Ed.2d 371 (1969) (citations omitted). Legislative history often proves an ambiguous guide. When dealing with legislative history of bills actually before Congress and passed by it, these problems are often outweighed by the benefits of the guidance provided. But comments by individual members of a later Congress considering another bill, or comments by staff of congressional committees, like *obiter dicta* in an opinion, often magnify the difficulties in divining the intention of the earlier Congress. It goes without saying that statements by one of the parties, such as the Secretary's own statements to Congress, *see* Appellant's Brief at 19, cannot provide evidence of Congressional intent. Due to the limited validity of such references, we will not discuss them further here.

The language of the Medicaid statute is clear, unambiguous, and contrary to the Secretary's interpretation. The Secretary has failed to produce any legislative history indicating that Congress wished to repeal or amend this statute. Accordingly, the Secretary's interpretation exceeded his delegated authority, and its effects were properly enjoined by the district courts. The judgments of the district courts will be affirmed.