**UNITED STATES of America**

v.

**Stephen A. KNOX, Appellant.**

**No. 92–7089.**

United States Court of Appeals,
Third Circuit.

Argued Aug. 17, 1992.
Decided Oct. 15, 1992.

James T. West, U.S. Atty., William Behe (argued), Asst. U.S. Atty., Harrisburg, Pa., for appellee.

Alan Silber (argued), Lawrence A. Stanley, Hayden, Perle & Silber, Weehawken, N.J., for appellant.

Before: HUTCHINSON, COWEN and WEIS, Circuit Judges.

OPINION OF THE COURT

COWEN, Circuit Judge.

The principal question presented by this appeal is whether videotapes that focus on the genitalia and pubic area of minor females constitute an "exhibition of the genitals or pubic area" under the federal child pornography laws, 18 U.S.C. § 2252(a)(2), (4) (Supp.1990); 18 U.S.C. § 2256(2)(E) (1988), even though these body parts are covered by clothing. We hold that such visual depictions qualify as an exhibition, and that this construction does not render the statute unconstitutionally overbroad. Finally, we conclude that the government presented sufficient evidence at the bench trial to establish both the necessary mens rea and the delivery of the films through interstate mail. We thus will affirm the conviction.

I.

In March of 1991, the U.S. Customs International Branch intercepted a mailing to France which contained a request that two videos, "Little Girl Bottoms (Underside)" and "Little Blondes" be sent to J. Richard Scott, 210 West Hamilton Avenue, No. 108, State College, PA. The parcel also contained a check drawn on the account of Stephen Knox and bearing his signature. The check listed his address as 210 East Hamilton Avenue, No. 25, State College, PA. A second envelope addressed to J. Richard Scott from the Netherlands also was confiscated and contained a catalog advertising for sale videotapes depicting nude, semi-clothed and clothed minors. Aware that Knox previously had been convicted of receiving child pornography through the mail, the customs investigators obtained a search warrant and with the assistance of the Pennsylvania State Police searched his apartment.[1]

The police officers seized three video cassettes produced by the Nather Company (hereafter "Nather Tapes"), a videotape distribution company based in Las Vegas, Nevada. A catalog from the Nather Company with checkmarks by several video selections was also removed from Knox's apartment. One of the marked videos in the brochure corresponded to a segment of a compilation tape which was seized. Envelopes addressed to Nather and Nather mail order forms were discovered as well as a carbon copy of a money order payable to Nather Company for an amount approximately equal to the price of a single video.

The tapes contained numerous vignettes of teenage and preteen females, between the ages of ten and seventeen, striking provocative poses for the camera. The children were obviously being directed by someone off-camera. All of the children wore bikini bathing suits, leotards, underwear or other abbreviated attire while they were being filmed. The government conceded that no child in the films was nude, and that the genitalia and pubic areas of the young girls were always concealed by an abbreviated article of clothing. The photographer would zoom in on the children's pubic and genital area and display a close-up view for an extended period of time. Most of the videotapes were set to music. The films themselves and the promotional brochures distributed by Nather demonstrate that the video tapes clearly were designed to pander to pedophiles. *See infra* at 818.

The United States prosecuted based exclusively on the three Nather tapes. Knox was indicted on two counts: (1) knowingly receiving through the mail visual depictions of a minor engaged in sexually explicit conduct and (2) knowingly possessing three or more videotapes that contain a visual depiction of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) and (4). Sexually explicit conduct for both of these offenses is defined to include a "lascivious exhibition of the genitals or pubic area." 18 U.S.C. § 2256(2)(E).

Pursuant to Federal Rule of Criminal Procedure 12(b), Knox filed a pre-trial motion to dismiss the indictment contending that the videos did not contain an "exhibi-

---

1. The district court determined that the search of Knox's apartment did not violate the Fourth Amendment, and Knox does not contest this decision on appeal.

tion" of the genitals or pubic area since these areas were always covered by underwear, a leotard or a bathing suit. Knox and the government agreed to a pre-trial hearing to determine whether the indictment was facially sufficient. The district judge viewed portions of the Nather tapes which the parties stipulated were representative of the material contained in the videos. To determine the meaning of the statutory language, "exhibition of the pubic area", the district court looked to the plain meaning of the words. Since the pubic area is located directly adjacent to the genitalia, the district court concluded that other areas in close proximity to the genitals, specifically the "uppermost portion of the inner thigh", were also included in the statutory definition of the pubic area. *District Court Memorandum* at 14; App. at 41. Since the upper portion of the inner thigh was clearly exposed, the court held that the tapes contained an exhibition of the pubic area, and therefore denied Knox's motion to dismiss the indictment. 776 F.Supp. 174 (M.D.Pa.1991).

Knox waived his right to a jury trial and a bench trial was held. At the bench trial, all of the exhibits and testimony from the pre-trial hearing were incorporated into the record for purposes of the trial. Additionally, the government admitted into evidence advertising catalogs from Nather, Nather mail order forms, and envelopes addressed to the Nather Company which were seized from Knox's apartment. The catalogs described in detail the contents and intended effect of the films that could be purchased:

'Sassy Sylphs' will blow your mind so completely you'll be begging for mercy.

Just look at what we have in this incredible tape: about 14 girls between the ages of 11 and 17 showing so much panty and ass you'll get dizzy. There are panties showing under shorts and under dresses and skirts; there are boobs galore and T-back (thong) bathing suits on girls as young as 15 that are so revealing it's almost like seeing them naked (some say even better).

*District Court Memorandum* at 11; App. at 38. The government also introduced evidence to establish that Nather mailed the tapes from its office in Nevada to the mailbox which Knox had rented under a fictitious name. Finally, the carbon copy of a sixty-two dollar money order payable to Nather was admitted to prove the method of payment. Although Knox did not testify and called no defense witnesses, he introduced magazine advertisements for Nather's videotapes which claimed that the absence of complete nudity rendered the tapes legal to purchase and possess.

The district court found Knox guilty on both counts. Thereafter, on February 13, 1992, Knox filed a motion for a judgment of acquittal or, alternatively, as he styled it, an application for a hearing to explore the anatomical issue decided by the court, predicated upon the contention that the uppermost portion of the inner thigh is not the pubic area. In conjunction with this motion, Knox submitted the affidavit of Dr. Todd Olsen, Director of Human Gross Anatomy at the Albert Einstein College of Medicine. The affidavit of Dr. Olsen stated that defining the pubic area to encompass the uppermost portion of the inner thigh is anatomically incorrect. Since the motion was filed three months after entry of the verdict, the district court denied the motion as untimely. Knox was sentenced to the minimum mandatory term of imprisonment of five years for each count, to be served concurrently. He appealed from the denial of the motion to dismiss the indictment, the guilty verdict, and the denial of the post-trial motion for judgment of acquittal.

II.

■ As a preliminary matter, we must resolve whether this Court has jurisdiction to review the denial of the post-trial motion for judgment of acquittal. Federal Rule of Criminal Procedure 29(c) provides: "If the jury returns a verdict of guilty ..., a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7–day period." The time limit imposed on criminal defendants by Rule 29(c) may only be extended

by court order, and a district court's refusal to consider a motion which is not made within the specified period is not error. *United States v. Wright–Barker,* 784 F.2d 161, 170 (3d Cir.1986); *United States v. Henshaw,* 687 F.Supp. 183, 185 (E.D.Pa.), *aff'd,* 862 F.2d 311 (3d Cir.1988). The district court entered the verdict of guilty against Knox on November 15, 1991. Knox's counsel failed to move for a judgment of acquittal until February 13, 1992, far beyond the seven-day period mandated by Rule 29. Although the district court had the power to rule on Knox's belated motion, *see United States v. Coleman,* 811 F.2d 804, 807 (3d Cir.1987), the exercise of that power was discretionary and the district judge chose to deny the motion as untimely. The district court clearly acted within its discretionary authority in refusing to reach the merits of a motion filed three months after the entry of the verdict. Knox seeks to appeal the substantive issues raised by his motion for judgment of acquittal. Since we conclude that the district court did not abuse its discretion in declining to entertain the motion, we need not address the substance of that application. We now turn to the remaining rulings before us: the denial of the motion to dismiss the indictment and the entry of the guilty verdict.

### III.

The Protection of Children Against Sexual Exploitation Act of 1977, as subsequently amended, criminalizes knowingly receiving through the mail visual depictions of a minor engaged in sexually explicit conduct and knowingly possessing three or more videotapes which contain a visual depiction of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2252(a)(2), (4). Sexually explicit conduct for purposes of both of these offenses is defined to include the "lascivious exhibition of the genitals or pubic area." 18 U.S.C. § 2256(2)(E). Holding that the indictment was facially sufficient, the district court reasoned that the statutory requirement that there be an exhibition of the pubic area was fulfilled since the uppermost portion of the inner thigh is part of the pubic area, and the upper thighs were clearly exposed. Because the meaning of the terms "pubic area" and "exhibition" under 18 U.S.C. § 2256(2)(E) poses a pure question of law, our review is plenary. *United States v. Brown,* 862 F.2d 1033, 1036 (3d Cir.1988).

■ The district court's novel definition of the pubic area is anatomically and legally incorrect. The most widely accepted human anatomy treatises make clear that the pubic area is entirely above the genitals and not below or alongside that portion of the anatomy. H. Gray, *Gray's Anatomy,* 90–91 (30th ed. 1985); *Dorland's Illustrated Medical Dictionary,* 1533 (27th ed. 1988). The uppermost portion of a female's thighs is not contained in the pubic area as the district court found. On its face, the statute criminalizes only exhibitions of the genitals or the pubic area. It does not prohibit depictions of body parts simply because they are located in close proximity to the genitals. Nor does the statute criminalize all visual images of children which an individual may find sexually arousing.

■ It is axiomatic that when the statutory language is clear, the words must be interpreted in accordance with their ordinary meaning. *Malloy v. Eichler,* 860 F.2d 1179, 1183 (3d Cir.1988). Only the most extraordinary showing of contrary congressional intent may justify altering the plain meaning of a statute. *Id.* No evidence was presented that Congress intended to give the term "pubic area" a meaning more expansive than its standard medical definition. Even if the boundaries of the pubic area were uncertain, the rule of lenity mandates that ambiguity concerning the coverage of a criminal statute must be resolved in favor of the criminal defendant until Congress unequivocally states that the court has misconstrued its scope. *Crandon v. United States,* 494 U.S. 152, 168, 110 S.Ct. 997, 1006, 108 L.Ed.2d 132 (1990). The plain meaning of the statute coupled with the rule of lenity require the legal definition of "pubic area" to be confined to its medically accepted meaning. Displaying any portion of the inner thighs does not

constitute an exhibition of the pubic area under 18 U.S.C. § 2256(2)(E).

### IV.

Since the district court found that an exhibition existed from the exposure of the upper inner thigh, it refused to decide whether the filming of the children's covered genitals and pubic area qualified as an exhibition. Having adopted the medical definition of the term "pubic area", we address the principal issue on appeal, the interpretation of an "exhibition." The government contends that the pictorial representation of the genitals or pubic area, covered only by underwear, a bikini bathing suit, a leotard or other abbreviated attire constitutes an exhibition of that body region. Defendant asserts that the genitals or pubic area must be unclad or nude, and fully exposed to the camera, before an exhibition may occur.

When interpreting a statute, the starting point is always the language of the statute itself. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). Courts presume that Congress expressed its legislative intent through the ordinary meaning of the words it chose to use, *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962), and if the statutory language is clear, it is not necessary to glean congressional intent through an examination of legislative history, *TVA v. Hill*, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978); *Barnes v. Cohen*, 749 F.2d 1009, 1013 (3d Cir.1984), *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). An extraordinary showing of contrary congressional intent is necessary to justify altering the plain meaning of a statutory term. *Malloy*, 860 F.2d at 1183.

Knox attempts to read a nudity requirement into a statute which has none. The amended Protection of Children Against Sexual Exploitation Act criminalizes the "lascivious exhibition of the geni-

tals or pubic area." 18 U.S.C. § 2256(2)(E) (1988). Exhibit means "to present to view: show, display ... to show publicly: put on display in order to attract notice to what is interesting or instructive." *District Court Memorandum* at 16 (quoting *Webster's New International Dictionary, Unabridged* (1976)). The genitals and pubic area of the young girls in the Nather tapes were certainly "on display" as the camera focused for prolonged time intervals on close-up views of these body parts. Additionally, the obvious purpose and inevitable effect of the videotape was to "attract notice" specifically to the genitalia and pubic area. Applying the plain meaning of the word "exhibition" leads to the conclusion that nudity is not a prerequisite for the occurrence of an exhibition.

Since the statutory language does not suggest that a nude exhibition is necessary, Knox bears the burden of demonstrating a clear contrary congressional intent to warrant importing into the statute an unexpressed requirement. *See Malloy*, 860 F.2d at 1183. An examination of the relevant legislative history, however, strengthens not undermines our construction of the statutory language. The legislative proposal before the original child pornography statute was enacted in 1977 would have proscribed "nudity, which nudity is depicted for the purpose of sexual stimulation or gratification of any individual who may view such depiction." S. 1011, 95th Cong., 2nd Sess. (1977). Clearly, Congress understood how to limit the statute's scope to encompass only nude displays.

Since Congress considered including nudity as an element of a criminal depiction, the decision to eliminate this requirement must be deemed intentional. When Congress passed the 1977 Act prohibiting a "lewd exhibition of the genitals or pubic area of any person", it must have desired to criminalize both clothed and unclothed visual images of a child's genitalia if they were lewd.[2] Appellant relies on a letter from the Justice Department outlining its

---

**2.** A subsequent amendment, the Child Protection Act of 1984, replaced "lewd" with the word "lascivious", but the two words have identical

meanings. *United States v. Wiegand*, 812 F.2d 1239, 1243 (9th Cir.), *cert. denied*, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987).

views concerning S. 1001, the original proposed bill (containing the nudity language), as evidence that Congress assumed that an exhibition meant a nude exhibition. *Protection of Children Against Sexual Exploitation: Hearings before the Subcomm. to Investigate Juvenile Delinquency of the Comm. of the Judiciary*, 95th Cong., 1st Sess. 77–78 (1977), *reprinted in* 1978 U.S.C.C.A.N. 63 (letter from Patricia M. Wald, Assistant Attorney General to James O. Eastland, Chairman, Committee of the Judiciary). After suggesting that "lewd exhibition of the genitals" replace the proposed language, the Assistant Attorney General from the Justice Department stated "Congress could make clear in the legislative history of the bill what types of nude portrayals of children were intended to be encompassed within this definition." *Id.* The letter assumes that Congress only desired to prohibit nude exhibitions because at that time the language of the proposed bill included the word "nudity." By subsequently eliminating the word "nudity," Congress appears to have repudiated its earlier intention to confine the statute's coverage to nude exhibitions. Further, Congress failed to articulate anywhere in its extensive legislative history any desire that the statute, as enacted, prohibit only nude portrayals.[3]

The underlying rationale for the federal child pornography laws also supports the conclusion that clothed exhibitions of the genitalia are proscribed. When an obscenity statute is challenged as unconstitutional under the First Amendment, the Supreme Court balances the government's interest in protecting the sensibilities of unwilling recipients from exposure to pornography against the dangers of government censorship. *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Because the government interest, although legitimate, is not compelling, regulation of obscene materials is limited to works which

"appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." *Id.* at 24, 93 S.Ct. at 2615.

The Supreme Court allows the states and Congress greater leeway to regulate and proscribe pornography that depicts minors as distinguished from adults since the harmful effects suffered by a child are palpably more severe. *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). The Court relaxes the *Miller* obscenity test when pornographic material portrays minors since the government's interest in "safeguarding the physical and psychological well-being of a minor" is "compelling." *Id.* at 756–57, 102 S.Ct. at 3354 (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982)). The use of children as subjects of pornographic materials is harmful to the physiological, emotional and mental health of the child. *Id.* 458 U.S. at 757, 102 S.Ct. at 3355; *Osborne v. Ohio*, 495 U.S. 103, 109, 110 S.Ct. 1691, 1696, 109 L.Ed.2d 98 (1990). The psychological effect of visually recording the sexual exploitation of a child is devastating and its elimination of "surpassing importance." *Ferber*, 458 U.S. at 757, 102 S.Ct. at 3355. Since the child's image is permanently recorded, the pornography may haunt him or her for a lifetime because the child will be aware that the offensive photograph or film is circulating through the masses. *Id.* at 759 n. 10, 102 S.Ct. at 3355 n. 10 (quoting Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 Wake Forest L.Rev. 535, 545 (1981)). The crime is the affront to the dignity and privacy of the child and the invasion of the child's vulnerability:

Human dignity is offended by the pornographer. American law does not protect all human dignity; legally, an adult

**3.** *See* H.R.Rep. No. 99–910, 99th Cong., 2nd Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 5952–59; S.Rep. No. 98–169, 98th Cong., 2nd Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 492; H.R.Rep. No. 98–536, 98th Cong., 2nd Sess. (1983); S.Rep. No. 95–438, 95th Cong., 2nd Sess.

(1977), *reprinted in* 1978 U.S.C.C.A.N. 40–68; H.R.Rep. No. 95–696, 95th Cong., 2nd Sess. (1977), *reprinted in* 1978 U.S.C.C.A.N. 69–71; H.R.Conf.Rep. 99–910, 99th Cong., 2nd Sess. (1977).

can consent to its diminishment. When a child is made the target of the pornographer-photographer, the statute will not suffer the insult to the human spirit, that the child should be treated as a thing. *U.S. v. Wiegand,* 812 F.2d 1239, 1245 (9th Cir.), *cert. denied,* 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987). Additionally, controlling the production and dissemination of child pornography is of paramount importance since pedophiles often use child pornography to seduce other children into performing sexual acts. *Osborne,* 495 U.S. at 111, 110 S.Ct. at 1697.

To vindicate the compelling government interest in protecting the safety and welfare of children, not only is the spectrum of constitutionally unprotected pornographic material broader when the subjects are children rather than adults, but also the arsenal of available enforcement mechanisms is more extensive. For instance, the mere possession of child pornography, even in one's home, may be criminalized although only distribution of obscenity depicting adults can be proscribed. *Compare Stanley v. Georgia,* 394 U.S. 557, 568, 89 S.Ct. 1243, 1249, 22 L.Ed.2d 542 (1969) (Georgia statute outlawing private possession of obscenity violates the First Amendment) *with Osborne,* 495 U.S. at 108, 110 S.Ct. at 1695–97 (Ohio statute criminalizing possession of child pornography upheld against First Amendment challenge due to the compelling interest in protecting minors).

The harm Congress attempted to eradicate by enacting the child pornography laws is present when a photographer unnaturally focuses on a minor child's clothed genital area with the obvious intent to produce an image sexually arousing to pedophiles. The child is treated as a sexual object and the permanent record of this embarrassing and humiliating experience produces the same detrimental effects to the mental health of the child as a nude portrayal. The rationale underlying the statute's proscription applies equally to *any lascivious* exhibition of the genitals or pubic area whether these areas are clad or completely exposed.

Knox next asserts that our decision in *U.S. v. Villard,* 885 F.2d 117 (3d Cir.1989), mandates that the genitals or pubic area be exposed before an exhibition may occur. In *Villard,* we stated that "more than merely nudity" was required for a violation of the statute; otherwise, "inclusion of the term 'lascivious' would be meaningless." *Id.* at 121. The requirement of more than mere nudity does not mean, as Knox contends, that nudity is a prerequisite to the existence of an exhibition; rather *Villard* simply stated the obvious principle that nudity alone is insufficient to constitute a *lascivious* exhibition. No one seriously could think that a Renoir painting of a nude woman or a family snapshot of a naked child in the bathtub violates the child pornography laws. Nudity must be coupled with other circumstances that make the visual depiction lascivious or sexually provocative in order to fall within the parameters of the statute. Such was our holding in *Villard,* which addressed whether sufficient evidence existed to justify a finding of lasciviousness.

*Villard* is not only consistent with our interpretation of an exhibition, but supports this construction. The *Villard* Court outlined six factors which should be analyzed to determine whether an exhibition is lascivious:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) *whether the child is fully or partially clothed, or nude;*

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id.* at 122 (emphasis added) (quoting *United States v. Dost,* 636 F.Supp. 828, 832

(S.D.Cal.1986), *aff'd sub nom.,* *United States v. Wiegand, supra*). The analysis is qualitative and no single factor is dispositive. *Id.* The inclusion of the fourth factor rests on the implicit assumption that a clothed exhibition of the genitals is criminalized under the statute. Since whether a child is fully clothed, partially clothed or naked is one of several factors to be weighed to determine whether an exhibition is lascivious, it follows that an exhibition may occur when a child is fully or partially clothed.

Having analyzed the language of the statute, its legislative history, the underlying rationale for the federal child pornography laws and relevant case law, we conclude that nude exposure of the genitals or pubic area is not necessary for an exhibition to take place.

## V.

■■■■■ Interpreting an "exhibition" of the genitals or pubic area to include a clothed display of these areas does not render the statute unconstitutionally overbroad.[4] The function of the First Amendment overbreadth doctrine is to prevent broadly worded statutes which control constitutionally unprotected conduct from deterring constitutionally protected expression. Invalidating a statute as overbroad, however, is an exceptional remedy and should be employed sparingly and only as a last resort since it is "strong medicine." *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). Before a child pornography statute is declared unconstitutional, the overbreadth must "not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 615, 93 S.Ct. at 2918. The requirement of substantial overbreadth is equally applicable to challenges that arise in defense of a criminal prosecution. *Ferber*, 458 U.S. at 772–74, 102 S.Ct. at 3363. In *Ferber*, the Supreme Court held that the New York statute which criminalized the "lewd exhibition of the genitals" was not constitutionally overbroad. *Id.* Although some protected expression, ranging from medical textbooks to National Geographic photographs, could possibly be reached by the statute, this tiny fraction of materials within the statute's coverage could be protected by case-by-case analysis. *Id.*

Knox's prediction that our interpretation of an exhibition will result in prosecutors leafing through family albums and church bulletins containing innocent pictures of fully clothed children and pressing charges is unfounded. Although our interpretation of an exhibition is expansive, the limiting principle in the statute is the requirement of lasciviousness.[5] A visual depiction of a child, whether the child is clothed or naked, must be lascivious to be proscribed. Whether a depiction is lascivious is essentially a subjective inquiry into whether or not the material is intended to elicit a sexual response from the viewer. *Villard*, 885 F.2d at 122. Only a minuscule fraction of all pictures of minor children will be sufficiently sexually suggestive and unnaturally focused on the genitalia to qualify as lascivious. Even fewer images where a minor's genital area is not fully exposed will constitute a lascivious exhibition since the fact that a child's genital area is covered is a factor militating against a finding of lasciviousness. Thus, including scantily clothed displays of the genitals within the meaning of an exhibition leaves the statute "directed at the hard core of child pornography," *Ferber*, 458 U.S. at 773, 102 S.Ct. at 3363, which results in leaving an indelible psychological scar on the exploited child. Our interpretation simply declines to create an absolute immunity for pornographers who pander to pedophiles by using as their subjects children whose genital areas are barely covered.

---

**4.** The term "pubic area" cannot be challenged as vague or overbroad since Knox contends, and we agree, that this phrase describes a precise anatomical region.

**5.** The issue is not raised in this case, but we note that although the meaning of lasciviousness is far from crystal clear, it is not unconstitutionally vague or overbroad. *See United States v. O'Malley*, 854 F.2d 1085, 1086–87 (8th Cir.1988); *Wiegand*, 812 F.2d at 1243.

## VI.

Knox contends that insufficient evidence was presented at trial for a trier of fact to have found, beyond a reasonable doubt, that (1) the Nather tapes traveled through the mail in interstate commerce; and (2) Knox "knowingly" received child pornography through the mail and "knowingly" possessed three pornographic videotapes. Generally, this Court must examine the evidence as a whole in the light most favorable to the government, and must sustain a conviction if there is substantial evidence to support it. *United States v. Lowell*, 649 F.2d 950, 958 (3d Cir.1981). If a defendant fails to file a timely motion for judgment of acquittal, however, we must review the sufficiency of the evidence only for plain error. *Wright–Barker*, 784 F.2d at 170 (citing *United States v. Manos*, 340 F.2d 534, 537 (3d Cir.1965)). Since Knox's motion for judgment of acquittal was untimely (*see* discussion *supra* section II), we must determine if the district court committed plain error in reaching its challenged findings. At least one court of appeals has held that this semantic distinction does not alter the analysis because the plain error test and the sufficiency of the evidence standard are essentially equivalent inquiries. *See United States v. Bowie*, 892 F.2d 1494, 1497 (10th Cir.1990) (although the plain error rule was applicable "the standard actually applied is essentially the same as if there had been a timely motion for acquittal"); 2 Steven A. Childress, *Federal Standards of Review* § 9.12 (2d ed. 1992). We need not determine the precise boundaries of the plain error test since the government fulfilled the more stringent standard—there was sufficient evidence to support the district court's finding that the Nather tapes traveled through the mail and that Knox knowingly received and possessed those films.

▆▆▆▆ To establish interstate mailing, the government introduced evidence that Knox rented a mailbox under a fictitious name and that he received other pornographic materials at that mailbox. When agents searched Knox's apartment pursuant to a valid search warrant, they discovered ad-vertisements from Nather with checkmarks by several video tapes and envelopes, pre-addressed to Nather, with forms to order Nather tapes. One of the videos marked in the catalog was included as a segment of a compilation tape found in Knox's apartment. A carbon copy of a $62 money order payable to Nather was also seized from Knox's apartment. Sixty-two dollars is the approximate price of a single Nather tape. Knox is correct that the government never introduced direct evidence that Nather mailed tapes to Knox's rented mailbox. A trier of fact, however, may consider direct and circumstantial evidence and the reasonable inferences to be drawn therefrom. The above facts provide strong circumstantial support that Nather, a Nevada mail order video company without any offices in Pennsylvania, at some point utilized the postal system to cause the tapes it distributes to be discovered in Knox's apartment in Pennsylvania. We cannot say that it was plain error to conclude that the Nather tapes traveled through the mail.

The district court also did not commit plain error by finding that Knox "knowingly" received and possessed the Nather tapes. Knox maintains that the absence of nudity in the films and the disclaimers in the Nather brochures that the videos were legal to purchase and own disproves the mens rea element of section 2252. We have previously held that the mens rea requirement of section 2252 "does not require that a recipient of child pornography know the precise contents of such materials." *United States v. Brown*, 862 F.2d 1033, 1036 (3d Cir.1988). In *Brown*, the defendant ordered one film, but accidentally received a different tape. Since the defendant knew the video he requested was child pornography, we deemed it irrelevant that he did not know the exact contents of the substituted tape actually mailed to him.

▆▆▆▆ Knox's argument in this case is somewhat different. He claims that although he knew the contents of the Nather tapes, he was unaware that the videos were child pornography and believed they were legal to own. To address this contention, we look to the Supreme Court's interpreta-

tion of a strikingly similar statute for guidance. To fulfill the "knowingly" requirement of 18 U.S.C. § 1461 (the obscenity law concerning adults)[6], the Supreme Court held that the prosecution need only show that the defendant had knowledge of the contents, character and nature of the materials. *Hamling v. United States*, 418 U.S. 87, 123, 94 S.Ct. 2887, 2910, 41 L.Ed.2d 590 (1974). To require proof that the defendant knew the materials were obscene, and thus illegal to distribute, would allow defendants to avoid prosecution by claiming ignorance of the relevant law. *Id.* It would be ironic to construe the same word, knowingly, in the analogous child pornography law as more lenient to criminal defendants since the purpose for enacting the child pornography statute was to create more stringent regulation for child pornography than already existed through the generally applicable obscenity laws. Therefore, to fulfill the knowledge element of section 2252, a defendant simply must be aware of the general nature and character of the material and need not know that the portrayals are illegal. *See United States v. Moncini*, 882 F.2d 401, 404 (9th Cir.1989) (no need to prove knowledge of illegality under section 2252); *United States v. Tolczeki*, 614 F.Supp. 1424, 1429 (N.D.Ohio 1985) (same).[7] The child pornography laws would be eviscerated if a pedophile's personal opinion about the legality of sexually explicit videos was transformed into the applicable law.

There is no doubt that Knox was aware of the nature of the Nather tapes when he received them. Newsletters from Nather found in Knox's apartment described the contents of the films, "girls between the ages of 11 and 17 showing so much panty and ass you'll get dizzy . . . so revealing it's almost like seeing them naked", and the video's intended effects,

"Sassy Sylphs will blow your mind so completely you'll be begging for mercy." Knox handwrote his own descriptions of the Nather films on the outside of the boxes. For instance, on the Nather II tape, Knox wrote "13–year old flashes" followed by "hot." Knox characterizes the second vignette as "15 year old shows nipple." Both Nather's and Knox's descriptions of the tapes clearly demonstrate that Knox was aware that the videotapes contained sexually oriented materials designed to sexually arouse a pedophile. Sufficient evidence was presented at the bench trial to support a finding that Knox was aware of the nature of the Nather tapes, and therefore knowingly possessed and received them.

Even if a reasonable mistake as to the legality of the material was recognized as a defense, the language of the statute is clear that nudity is not a prerequisite for a lascivious exhibition. Additionally, relying on Nather's disclaimer is tantamount to asking a hard core pornographer for legal advice as to whether the material he earns a living by selling is legal. Nather's disclaimer could not reasonably lead Knox to believe that the videotapes were legal. If anything, the need to profess legality should have alerted Knox to the films' dubious legality.

## VII.

In sum, we hold that an "exhibition of the genitals or pubic area" pursuant to 18 U.S.C. § 2256(2)(E), encompasses visual depictions of a child's genitals or pubic area even when these areas are covered by an article of clothing. Our construction of the statutory language does not render the statute unconstitutionally overbroad since the requirement of lasciviousness limits the

---

6. Title 18 U.S.C. § 1461 (1988) provides in pertinent part:
   "Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section . . . to be non-mailable . . . shall be fined. . . ."

7. Since it was not raised, we reserve for another day the issue of whether a defendant must know that the subjects of the photograph or film are

minors. Although section 2252 does not require that the defendant know the age of the minor, some courts have held that the First Amendment dictates that defendants be entitled to establish reasonable mistake of age as an affirmative defense. *See United States v. United States Dist. Court for Cent. Dist. of Cal.*, 858 F.2d 534 (9th Cir.1988).

proscribed depictions to constitutionally unprotected expression. Finally, the district court did not commit plain error when it determined that the prosecution presented sufficient evidence to establish beyond a reasonable doubt that Knox knowingly received and possessed the videotapes and that the films traveled through interstate mail. The judgment of conviction will therefore be affirmed.